121 F.3d 77
 In re: APPLICATION FOR AN ORDER PERMITTING
METALLGESELLSCHAFT AG TO TAKE DISCOVERY, Pursuant To The
Federal Rules of Civil Procedure, of Siegfried Hodapp for
Use In An Action Pending in the Employment Court
("Arbeitsgericht") of Frankfurt Am Main, Germany.
METALLGESELLSCHAFT AG, Appellant,
v.
Siegfried HODAPP, Appellee.
 No. 2328, Docket 97-7479.
 United States Court of Appeals,
Second Circuit.
 Argued June 17, 1997.
Decided Aug. 12, 1997.
 
 Michael Blechman, New York City (Robert B. Bernstein, Kaye, Scholer, Fierman, Hays & Handler, New York City, on the brief), for appellant.
 Louis M. Solomon, New York City (Emily Stern, Solomon, Zauderer, Ellenhorn, Frischer & Sharp, on the brief), for Appellee.
 Before: WALKER, CALABRESI and LAY,* Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Metallgesellschaft AG ("MG"), a German industrial and trading company, appeals from a final judgment of the United States District Court for the Southern District of New York (Thomas P. Griesa, Chief Judge ), sitting in Part One, denying MG's application to compel discovery from Siegfried Hodapp pursuant to 28 U.S.C. § 1782(a) and vacating a prior subpoena issued by the same court ordering discovery in aid of a foreign proceeding. We agree with MG that the district court abused its discretion in refusing discovery. We reverse and remand.
 
 I. BACKGROUND
 
 2
 MG applied for discovery pursuant to 28 U.S.C. § 1782(a) from Hodapp, a New York resident and the former president of MG's principal subsidiary in the United States. Hodapp is suing MG in the Labor Court ("Arbeitsgericht") in Frankfurt, Germany, for breach of his employment contract with MG alleging that MG failed to pay severance remuneration during an 18-month period following his dismissal by the company. In response, MG has asserted that Hodapp has forfeited his right to such compensation under German law because he was in commercial competition with MG during the period following his dismissal. It was discovery relevant to this defense that MG sought pursuant to 28 U.S.C. § 1782(a). On March 25, 1997, the district court granted MG's application.
 
 
 3
 On April 9, 1997, the date for Hodapp's deposition and document production, Hodapp refused to testify or to produce documents, claiming a privilege under German law. MG promptly moved to compel Hodapp's compliance with the court's order, and on April 10, 1997, the district court heard the parties' arguments in chambers. Later that day, the district court vacated its formerly-issued subpoena for reasons stated on the record. The district court was of the view (1) that, generally speaking, it was preferable for discovery issues to be raised and resolved before the foreign tribunal in which the action was pending and (2) that the information sought by MG would not have been available to it had it been sought from the German court. See Joint Appendix at 159-60. The court also noted that the parties were scheduled to appear before the German Labor Court on April 18, 1997, where the matter could be raised for the foreign tribunal's consideration. See id. at 160. MG appeals from the dismissal of its § 1782(a) application.
 
 II. DISCUSSION
 
 4
 Title 28, section 1782(a), of the United States Code provides in pertinent part:
 
 
 5
 The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made ... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.... The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.
 
 
 6
 Under § 1782, once the statutory requirements are met, a district court is free to grant discovery in its discretion. See In re Esses, 101 F.3d 873, 875 (2d Cir.1996) (per curiam); In re Lancaster Factoring Co., 90 F.3d 38, 42 (2d Cir.1996). The parties do not dispute that the statutory requirements of § 1782 are satisfied: (1) Hodapp resides in the Southern District of New York, (2) the information sought is for use in a proceeding before a foreign tribunal, and (3) the applicant, as the defendant in that proceeding, is an interested person. See Esses, 101 F.3d at 875. The only open question is whether the district court abused its discretion in denying discovery.
 
 
 7
 The permissive language of § 1782 vests district courts with discretion to grant, limit, or deny discovery. However, on several occasions recently, we have circumscribed that discretion. See, e.g., In re Application of Euromepa, S.A., 51 F.3d 1095, 1099-1100 (2d Cir.1995); In re Application of Gianoli, 3 F.3d 54, 58-60 (2d Cir.1993); In re Application of Malev Hungarian Airlines, 964 F.2d 97, 100-01 (2d Cir.1992). Underlying these decisions is our view that district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts...." Malev, 964 F.2d at 100. In stating its views, the district court did not advert to these objectives, explicitly or implicitly, and in fact the reasons the court did give were at odds with these goals. Specifically, the district court remarked:
 
 
 8
 I have decided to not order the discovery here and I have decided to vacate the subpoena because I believe, on balance, this kind of discovery would not be afforded at this juncture in the German court if the matter were before the German court. I also believe that it is better to have these discovery issues come up on the 18th of April in the German court and be decided by the German court.
 
 
 9
 Joint Appendix at 159-60.
 
 
 10
 We have rejected any requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding. Gianoli, 3 F.3d at 59-60. Our holding in Gianoli rests on the text of § 1782, which "makes no reference whatsoever to a requirement of discoverability under laws of the foreign jurisdiction," id. at 59, as well as the history and purpose of the provision, see id. at 57-58. Similarly, we have held that a district court may not refuse a request for discovery pursuant to § 1782 because a foreign tribunal has not yet had the opportunity to consider the discovery request. See Malev, 964 F.2d at 100. Such a "quasi-exhaustion requirement," finds no support in the plain language of the statute and runs counter to its express purposes, as "[i]t would undermine the policy of improving procedures for assistance to foreign and international tribunals by imposing an additional burdens on persons seeking assistance from our federal courts...." Id. The district court abused its discretion by imposing such extra-statutory requirements and, as noted, by failing to take into consideration the twin aims of the statute in reaching its decision.
 
 
 11
 Hodapp contends that the district court acted properly in considering the foreign discoverability of the material sought in exercising its discretion. In doing so, Hodapp relies on language in Gianoli, 3 F.3d at 60, where we observed that "district judges may well find that in appropriate cases a determination of discoverability under the laws of the foreign jurisdiction is a useful tool in the exercise of discretion under section 1782." See also Euromepa, 51 F.3d at 1098. However, this language was not meant to authorize denial of discovery pursuant to § 1782 solely because such discovery is unavailable in the foreign court, but simply to allow consideration of foreign discoverability (along with many other factors) when it might otherwise be relevant to the § 1782 application. For example, if it were clear that discovery were equally available in both foreign and domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative, see Fed.R.Civ.P. 26(b)(2), or was brought vexatiously, see In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 848 F.2d 1151, 1156 (11th Cir.1988) (noting that "[i]f the judge ... suspects that the [§ 1782 discovery] request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request").
 
 
 12
 In the present case, however, the district court considered discoverability under foreign law as more than merely, as Gianoli indicated, a "useful tool," 3 F.3d at 60: it was the beginning and end of the inquiry. As we declared in Gianoli, foreign discoverability cannot be used, consistent with the language and purpose of § 1782, as such a blunt instrument. Id. at 58-59.
 
 
 13
 Moreover, even if the district court were animated by a concern that permitting discovery in this jurisdiction would alter the balance created by the procedural rules of the German court, recently, we have made the point that although American-style discovery for one party may skew foreign litigation, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." Euromepa, 51 F.3d at 1101. The district court did not follow this guidance. Instead of tailoring discovery pursuant to its authority under Fed.R.Civ.P. 26 or imposing reciprocal discovery obligations, the district court denied discovery outright.
 
 
 14
 We can understand how a district court might conclude, almost instinctively, that "it is better to have these discovery issues come up on the 18th of April in the German court and be decided be the German court." Joint Appendix at 160. After all, that foreign tribunal has the greatest interest in the case. However, through § 1782 Congress has seen fit to authorize discovery which, in some cases, would not be available in foreign jurisdictions, as a means of improving assistance by our courts to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts. See Malev, 964 F.2d at 100. If district courts were free to refuse discovery based upon its unavailability in a foreign court or because the foreign court had not first passed on the discoverability of the material sought, § 1782 would be irrelevant to much international litigation, frustrating its underlying purposes.
 
 
 15
 Hodapp also argues at some length that the district court was required to deny discovery because, under § 1782(a), "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." This argument is unavailing because--contrary to Hodapp's assertion--the district court did not base its decision on the existence of a privilege under German law. The court made no mention of the matter. Anyway, as is evident from the parties' briefs and oral argument, whether such a privilege exists under German law is far from clear. To require the district court to determine such an issue would involve it in a "speculative foray[ ] into legal territories unfamiliar to federal judges." Euromepa, 51 F.3d at 1099. Such a foray would result in " 'an unduly expensive and time-consuming fight about foreign law,' " id. (quoting Hans Smit, Recent Developments in International Litigation, 35 S. Tex. L.Rev. 215, 235 (1994)), undermining the twin aims of the statute. Thus, absent "authoritative proof that a foreign tribunal would reject the evidence obtained with the aid of section 1782," id. at 1100--in this instance presumably because of a violation of the alleged privilege--a district court should not refrain from granting the assistance afforded under the Act based simply on allegations to that effect.
 
 
 16
 No such "authoritative proof" was forthcoming, notwithstanding Hodapp's opportunity to request a ruling from the Labor Court in Frankfurt at the April 18th hearing. See Euromepa, 51 F.3d at 1100 & n. 3. In the face of this inaction, we will not speculate--particularly on the basis of an ambiguous affidavit submitted by Hodapp's German counsel--whether Hodapp enjoys a privilege under German law entitling him to refuse to comply with a discovery order under § 1782.
 
 III. CONCLUSION
 
 17
 We have considered Hodapp's remaining arguments and find them to be without merit. For the foregoing reasons, we reverse the judgment of the district court and remand for proceedings not inconsistent with this opinion.
 
 
 
 *
 Hon. Donald P. Lay of the United States Court of Appeals for the Eighth Circuit sitting by designation