

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-1998

# In Re: Bayer AG

Precedential or Non-Precedential:

Docket 97-5047

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"In Re: Bayer AG" (1998). *1998 Decisions*. Paper 138.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/138

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 9, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5047

In re: Application pursuant to 28 U.S.C. S 1782 for an
Order permitting BAYER AG, Applicant-Appellant, to  take
discovery, pursuant to the Federal Rules of Civil
Procedure, of BETACHEM, INC. for use in an action
pending in the FIRST INSTANCE COURT NO. 25
of BARCELONA, SPAIN

Bayer AG,
        Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 96-cv-05650)

Argued September 26, 1997

Before: SLOVITER, COWEN and LEWIS,* Circuit Judges

(Filed June 9, 1998)

Milton Sherman (Argued)
Kaye, Scholer, Fierman, Hays &
 Handler
New York, New York 10022

 Attorney for Appellant

_____

* Judge Lewis heard argument in this matter but was unable to clear the
opinion due to illness.

        Dwight E. Yellen (Argued)
         Ballon, Stoll, Bader & Nadler
         New York, New York 10018
        Will Levins
         Ballon, Stoll, Bader & Nadler
         Hackensack, N.J. 07601

        Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

The promulgation of the Federal Rules of Civil Procedure, with their emphasis on securing "the just, speedy, and inexpensive determination of every action," Fed. R. Civ. P. Rule 1, initiated a revolution in the litigation process in the federal courts in this country. Although those rules were not applicable to foreign litigation, they were not without influence. It was not surprising that within three decades there would be a concerted effort to liberalize the procedures in the United States for assisting foreign and international tribunals and litigants in obtaining oral and documentary evidence in the United States. Eventually this effort led to congressional action. Section 1782(a) of Title 28 of the United States Code now authorizes district courts to render assistance to foreign courts and the litigants before them in obtaining discovery from United States residents for use in foreign proceedings.

Pursuant to that section, Bayer AG, a drug manufacturer organized under the laws of the Federal Republic of Germany, filed an application in the district court of New Jersey to obtain discovery from BetaChem, Inc., a New Jersey corporation, for use in a patent infringement action pending in the Court of First Instance in Spain. The district court denied the application and Bayer appeals. The question before us is whether the district court relied on inapplicable or erroneous considerations when it denied Bayer's request.

2

I.

Facts and Procedural Background

In a related action, Bayer filed suit in January 1992 in the United States District Court for the Southern District of New York against Barr Laboratories, Inc., alleging patent infringement. Bayer alleged that Barr had infringed Bayer's United States ciprofloxacin patent no. 4,670,444 by filing an application with the United States Food and Drug Administration for permission to sell ciprofloxacin, a broad spectrum antibiotic drug. According to Bayer's allegations, Barr had purchased and planned to continue to purchase ciprofloxacin from BetaChem, which is the United States sales agent for Chemo Iberica, S.A. ("Chemo") and its affiliate Quimica Sintetica, S.A. ("Quimica"), both Spanish corporations. During the course of discovery in that action, Barr produced a confidential document that describes Chemo's process for making ciprofloxacin. Bayer also learned that BetaChem had submitted similar documents to the FDA on Barr's behalf.

Apparently as a result of the information received, Bayer filed a patent infringement action in June 1993 against Chemo and Quimica in the Court of First Instance No. 25 in Barcelona, Spain, claiming that Chemo and Quimica had infringed and were infringing its Spanish process patent no. 505,138 by manufacturing and selling ciprofloxacin. Bayer believed the document it had received from Barr in discovery in the New York action was important for its case in Spain. Indeed, that document has been referred to as the "smoking gun document." App. at 100. Therefore, sometime in early 1996, Bayer sought to submit that document to the Spanish court. Before doing so, it sought permission from the magistrate judge who had entered a confidentiality order in the New York action. The magistrate judge gave approval, subject to the Spanish court's willingness to enter a confidentiality order.

Bayer then approached the Spanish court and on October 14, 1996, it obtained an order from the Spanish court stating that it would receive "any document that may be presented," that it would determine the document's

3

admissibility at a later date, and that it would keep the document confidential to the extent permissible under Spanish law. Thereafter, the New York magistrate judge was reported to have signified his satisfaction that this order "effectively implements my confidentiality requirement." App. at 102.

On December 3, 1996, Bayer filed the pending action in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. S 1782(a). Bayer alleged that it owned patents covering the composition and/or process for making ciprofloxacin in numerous countries, including its Spanish patent no. 505,138 covering a process for making ciprofloxacin; that Chemo and its affiliated corporation Quimica infringe that Spanish patent; and that BetaChem purchased ciprofloxacin from Chemo and/or Quimica which BetaChem in turn sold to Barr. Bayer alleged that BetaChem has material information about Chemo's process to make ciprofloxacin, and that Spanish law provides no procedures for the orderly exchange of documents. Bayer sought permission to seek discovery of all of BetaChem's documents relating to the process of Chemo and Quimica for manufacturing ciprofloxacin, including the Drug Master File allegedly containing the document that BetaChem had filed with the FDA on Barr's behalf. Bayer also sought permission to depose certain BetaChem employees.

BetaChem opposed Bayer's application on three grounds. First, it argued that discovery requests made pursuant to S 1782(a) may be granted only if the material sought would be discoverable in the foreign jurisdiction. In that regard, it submitted a written legal opinion from a Spanish attorney, who stated that under Article 603 of the Spanish Civil Procedure Law a Spanish court may, at the request of a party, order the disclosure of documents that are the exclusive property of a non-litigant if the judge who will decide the litigation determines that the documents sought would be material to the court's decision. App. at 61-62. BetaChem argued that, absent such a determination of materiality by the Spanish court, the testimony and materials sought by Bayer would not be discoverable in Spain and, therefore, are not discoverable underS 1782(a).

4

Second, BetaChem argued that because the Spanish action was already sub judice and Bayer had been aware of the documents since 1993, Bayer's application was untimely. Third, BetaChem argued that the documents in the Drug Master File are highly confidential and should not be discoverable.

In its opinion delivered orally, the district court, relying on our opinion in John Deere Ltd. v. Sperry Corp., 754 F.2d 132 (3d Cir. 1985), framed its inquiry as whether permitting the discovery would "offend[ ] the foreign jurisdiction." App. at 94. Although the court stated that it did not consider discoverability in the foreign jurisdiction to be a prerequisite to obtaining discovery under S 1782(a), its discussion nevertheless focused exclusively on the requirement under Spanish law of a determination that the documents sought from a non-litigant would be material. The district court reasoned that even though it would probably regard the discovery Bayer sought to be material, its own view was irrelevant because it was the Spanish judge who was to make the materiality determination. The court then ruled that because Bayer had not obtained such a materiality ruling, the discovery it sought from BetaChem would not be discoverable in Spain and therefore Bayer lacked proof that granting its application would not offend the Spanish court. App. at 112-14. Accordingly, the district court denied Bayer's application and dismissed the action. This appeal followed.

On September 1, 1997, while this appeal was pending, the Court of First Instance ruled against Bayer in its infringement action. Bayer then filed an appeal in the Provincial Court of Barcelona. Both parties agree that, under Spanish law, the Provincial Court may, under certain circumstances, receive new evidence not submitted to the Court of First Instance. Accordingly, neither party contends that the issue before us has been mooted by the disposition in the Court of First Instance.

II.

Discussion

The district court's denial of Bayer's discovery application constitutes a final order over which we have jurisdiction

5

pursuant to 28 U.S.C. S 1291. See In re Gianoli Aldunate, 3 F.3d 54, 57 (2d Cir. 1993). In general, we review a district court's decision to deny a S 1782 application for abuse of discretion. Where the district court misinterpreted or misapplied the law, however, or where the court relied on inappropriate factors in the exercise of its discretion, our review is plenary. See id. at 58; see generally Redland Soccer Club, Inc. v. Department of the Army, 55 F.3d 827, 845 (3d Cir. 1995).

A.

Section 1782, entitled "Assistance to foreign and international tribunals and to litigants before such tribunals," provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person . . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. S 1782(a).

In adopting the 1964 amendments now incorporated in S 1782, Congress liberalized many of the procedures for obtaining discovery for use in foreign litigation. The Senate Report sets forth the following general statement regarding the purpose of the statute:

> Until recently, the United States has not engaged itself fully in efforts to improve practices of international cooperation in litigation. The steadily

6

growing involvement of the United States in international intercourse and the resulting increase in litigation with international aspects have demonstrated the necessity for statutory improvements and other devices to facilitate the conduct of such litigation. Enactment of the bill into law will constitute a major step in bringing the United States to the forefront of nations adjusting their procedures to those of sister nations and thereby providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.

It is hoped that the initiative taken by the United States in improving its procedures will invite foreign countries similarly to adjust their procedures.

S. Rep. No. 88-1580, at 2 (1964), reprinted in 1964 U.S.C.C.A.N. 3783.

Thus, the amendment to S 1782 was designed to facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations in this respect. It appears that the scope of discovery is not as far-reaching in foreign litigation as it is in domestic litigation. The Senate Report makes clear that under amended S 1782(a), "the issuance of an appropriate order" is left to the discretion of the district court. Id. at 3788. That court may refuse to issue an order or may impose conditions it deems desirable. The Report further states that "[i]n exercising its discretionary power, the court may take into account the nature and attitudes of the government of the country from which the request emanates and the character of the proceedings in that country." Id.

In light of the absence of any language in the text of S 1782 that limits its application to cases in which the materials sought to be discovered would be discoverable in the foreign jurisdiction, see In re Esses, 101 F.3d 873, 875 (2d Cir. 1996), we must examine the basis for the district court's exclusive focus on whether the materials sought by Bayer would be discoverable in Spain.

7

The inquiry begins with the district court's interpretation of John Deere Ltd. v. Sperry Corp., 754 F.2d 132 (3d Cir. 1985), this court's oft-cited opinion addressingS 1782. John Deere Limited and Deere & Company (jointly referred to as John Deere), which had been sued in Canada by Sperry Corporation for patent infringement, filed a S 1782 application in the Eastern District of Pennsylvania seeking to depose Horace McCarty and Emmett Glass, named as the co-inventors of the patented machine at issue. McCarty and Glass were American employees of Sperry. The district court denied John Deere's application, both because Canada would not honor letters rogatory emanating from a court of the United States and because the material sought was not clearly admissible at trial in Canada. Before this court had an opportunity to hear John Deere's appeal from this ruling, the Federal Court of Canada issued an opinion and order directing Sperry to produce McCarty, a Sperry officer, but not Glass, a non-officer.

In its appeal from the district court's denial of its discovery application, John Deere challenged the relevancy under S 1782(a) of the availability of reciprocal foreign procedures and the admissibility of the evidence in the foreign jurisdiction, the issues the district court deemed determinative. We held that neither reciprocity nor admissibility were controlling concerns under S 1782(a). We stated instead that the "liberal intent to provide judicial assistance whether or not reciprocity exists has been acknowledged as a primary statutory goal since section 1782's inception." Id. at 135.

Although we gleaned through the legislative history that the district courts were authorized "to scrutinize the underlying fairness of foreign proceedings to ensure they comply with notions of due process," we stated that it would seem to exceed the proper scope of S 1782 to require the district court to undertake a more extensive inquiry. Id. at 136 & n.3. Indeed, it "would contradict the express purpose of section 1782" if the American court were required to predict the actions of another country's tribunal. Id. at 136. Significantly, we held that inasmuch as the Canadian court had held that McCarty's testimony would be material and required by the equities, the district

8

court should have required that of Glass as well. Id. at 137–38.

In reading John Deere, it is important to recognize that because the Canadian court had already held the information discoverable, the discoverability issue was not before us. Some courts have placed significance on our statements that "[a]s a cooperative measure, section 1782 cannot be said to ignore those considerations of comity and sovereignty that pervade international law. A grant of discovery that trenched upon the clearly established procedures of a foreign tribunal would not be within section 1782." Id. at 135. We also stated that we would not "countenance the use of U.S. discovery procedures to evade the limitations placed on domestic pre-trial disclosure by foreign tribunals." Id. at 136.

Those comments made explicit our concern over comity, but nothing in them signifies an intent to impose a discoverability requirement. Such a requirement would be inconsistent with much of the language of the opinion, where we stated, inter alia, "Nor should the practice of Canadian courts in refusing to render judicial assistance, be the determinative factor in the construction given section 1782 by an American court." Id. at 135–36. In fact, in John Deere itself we were satisfied that granting the S 1782 application would not have caused any offense to the Canadian tribunal, even though discovery from Glass had not been authorized by the Canadian courts.

The application of the John Deere opinion by the district court in this case is understandable because at least two courts of appeals have read the opinion as imposing a discoverability requirement. See In re Asta Medica, S.A., 981 F.2d 1, 6 (1st Cir. 1992); In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 848 F.2d 1151, 1156 (11th Cir. 1988); see also In re First Court of First Instance in Civil Matters, Caracas, Venezuela, 42 F.3d 308, 310 (5th Cir. 1995) (dictum); In re Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 692–93 & n.7 (D.C. Cir. 1989) (same).

In contrast, the Second Circuit read John Deere as we do and recognized that the opinion decided only that S 1782

9

does not require that foreign courts have reciprocal assistance procedures or that the materials sought would be admissible in the foreign jurisdiction. Gianoli Aldunate, 3 F.3d at 60. That court said, insightfully, "John Deere is not a case about whether section 1782 requires discoverability, and the court never explicitly states that such a requirement exists." Id. It thus declined to interpret our general statements addressing the circumvention of foreign discovery laws as reading "an absolute discoverability requirement into section 1782." Id. See In re Euromepa S.A., 51 F.3d 1095, 1099–1100 (2d Cir. 1995).

This case presents us with our first opportunity to revisit our opinion in John Deere, and we use the occasion to make explicit our view that imposing a requirement that the materials sought be discoverable in the foreign jurisdiction would be inconsistent with both the letter and spirit of the statute. The prima facie showing mandated by the statute is only that the application be made (1) "by a foreign or international tribunal" or "any interested person," (2) that it be "for use in a proceeding in a foreign or international tribunal," and (3) that the person or entity from whom the discovery is sought be a resident of or be found in the district in which the application is filed. See Esses, 101 F.2d at 875. If Congress had intended to impose an additional element as restrictive as a requirement that the materials sought be discoverable in the foreign jurisdiction, it would have done so explicitly. See Gianoli Aldunate, 3 F.3d at 59 (citing statute's permissive language authorizing district court to resort to practice of the foreign country).

The legislative history is equally devoid of any indication that Congress intended to limit the scope of S 1782 to those situations in which the discovery sought would be discoverable under the laws of the foreign jurisdiction. In adopting the 1964 amendments, Congress's overarching goals were to provide efficient means of assistance to foreign courts and litigants and encourage other nations to return the favor by providing similar assistance to United States courts. See In re Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992); see also S. Rep. No. 88–1580, at 2 (1964), reprinted in 1964 U.S.C.C.A.N. 3783. Neither of

10

these congressional purposes requires courts to impose a discoverability requirement as a bright-line rule. See generally United States v. Ron Pair Enters. Inc., 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.") (citation & quotations omitted).

It is instructive to turn to the Senate Report, which states that "[i]f the court fails to prescribe the procedure, the appropriate provisions of the Federal Rules of Civil Procedure are to be followed, irrespective of whether the foreign or international proceeding or investigation is of a criminal, civil, administrative, or other nature." S. Rep. No. 88-1580, at 9 (1964), reprinted in 1964 U.S.C.C.A.N. 3789. In light of the well-known liberality of our Federal Rules, it is unlikely that Congress would have painted with so broad a brush if it had intended courts applying S 1782 to be limited to following another nation's more limited approach to discovery. See In re Metallgesellschaft AG, 121 F.3d 77, 80 (2d Cir. 1997) ("through S 1782 Congress has seen fit to authorize discovery which, in some cases, would not be available in foreign jurisdictions"). Moreover, if we were unwilling in John Deere to condition a S 1782 order on the availability of the particular discovery procedure in the foreign country, there is no reason why we should make discoverability itself a condition.

The policies advanced by the Court of Appeals for the First Circuit as the basis for reading a discoverability requirement into S 1782, see Asta Medica, 981 F.2d at 5-7, are not persuasive. The court expressed concern that a foreign party could invoke S 1782 and obtain broad American-style discovery while the same would not be available for that party's American adversary. Id. at 5-6. In essence, that is simply another way of imposing a reciprocity requirement, a requirement we rejected in John Deere. Any patent unfairness can be dealt with by the district court crafting an appropriate discovery order. See Euromepa, 51 F.3d at 1101. In any event, that consideration is not present in this case where S 1782 is being invoked against an entity that is not a party to the Spanish patent litigation.

11

The First Circuit also based its Asta Medica decision on its concern that granting a S 1782 application where the discovery sought would not be available in the foreign jurisdiction "would lead some nations to conclude that United States courts view their laws and procedures with contempt," thereby frustrating Congress's desire to stimulate foreign tribunals to provide reciprocal assistance to litigants before our own courts. Id. at 6-7. We agree that "Congress did not seek to place itself on a collision course with foreign tribunals and legislatures" and that we ought to avoid a construction of the statute that would lead other nations to conclude that we do not respect their laws and procedures. Id. We said as much in John Deere. 754 F.2d at 135. It does not follow that the inability to obtain discovery means that the foreign court objects to the inquiry. In many of such situations it may signify merely the unavailability of an applicable procedure.

It appears that the decision in Asta Medica was based on the unavailability of pretrial discovery from non-party witnesses in the countries in which the foreign patent litigation was pending. Asta Medica, 981 F.2d at 6-7. However, there is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use. Professor Hans Smit, one of the principal forces behind the 1964 revisions toS 1782, has stated, "although a foreign court might not compel production of the evidence in the manner employed by an American court, it might very well, and ordinarily would, readily accept and rely on the evidence obtained with the help of the American court." Hans Smit, Recent Developments in International Litigation, 35 S. Tex. L. Rev. 215, 236 (1994). In John Deere, we declined to preclude the testimony merely because "the Canadian court may question its own power to devise and grant an order for the discovery of a corporate employee resident outside its jurisdiction." John Deere, 754 F.2d at 138.

The opinion of the House of Lords in South Carolina Ins. Co. v. Assurantie Maatschappij "De Zeven Provincien" N.V., [1987] 1 App. Cas. 24 (1986) (appeal taken from Court of Appeal), is informative. There, a party involved in a re-insurance lawsuit pending in the English Commercial Court

filed a S 1782 application in the Western District of Washington seeking to obtain discovery from two Seattle-based companies not parties to the English litigation. Before the application could be heard, the Commercial Court enjoined the parties before it from pursuing the application on the ground that "the English court should retain the control of its own procedure and the proceedings that are before it." Id. at 34. On appeal, the House of Lords reversed.

First, it found that the availability of discovery under S 1782 posed no "interference with the [English] court's control of its own process." Id. at 41. Despite the court's inability to compel the discovery, the information could be obtained by a party if the possessor voluntarily produced it. Thus, the mere fact that the English court could not compel the production at issue did not mean that it would be offensive to the court if a party obtained it. See id. at 42.

Second, the House of Lords rejected the argument that by submitting to the jurisdiction of the English court, the parties were bound to accept its procedures. See id. It held that the parties to an English litigation were entitled to prepare their case by obtaining documents in a foreign country and this included the right to seek discovery under S 1782. See id. Moreover, because England's proscription of discovery from parties not before the court was intended to protect the non-parties rather than the litigating parties, it would make little sense to extend the protection of the English courts to American non-parties subject to discovery under the laws of the United States. See id. Finally, the House of Lords rejected the notion that resort to American discovery procedures would cause increased cost and delay. It reasoned that such effects were essentially self-imposed by the party's decision to oppose and fight a S 1782 application. Id. at 42-43.

The analysis used by the House of Lords, reflecting as it does the view of a foreign country with less liberal discovery procedures and applied in a real case, is an effective response to the First Circuit's assumption that a grant of discovery not available in the foreign jurisdiction would offend that jurisdiction's courts.

13

Of course, we recognize that there are some instances in which permitting discovery of certain evidence may cause offense to the courts of the foreign jurisdiction. Some countries may regard information held by spouses or children to be privileged; others may have different limits. The comity concerns we expressed against "use of U.S. discovery procedures to evade the limitations placed on domestic pre-trial disclosure by foreign tribunals," John Deere, 754 F.2d at 136, are applicable only when the substance of the discovery is objectionable. See generally Metallgesellschaft, 121 F.3d at 80 ("If district courts were free to refuse discovery based upon its unavailability in a foreign court . . . , S 1782 would be irrelevant to much international litigation, frustrating its underlying purposes."); Hans Smit, Recent Developments in International Litigation, 35 S. Tex. L. Rev. 215, 234–38 (1994) (discussing Congress's intention to make discovery available where the same would not be discoverable under foreign law). It follows that the lack of a finding of discoverability is an inadequate basis on which to deny a S 1782 application.

B.

The reference in S 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute. Consistent with the statute's modest prima facie elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to S 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application. In determining whether the foreign tribunal would take offense, the district court would be free, in the exercise of its discretion, to consider any materials, typically statutes or case law from the foreign jurisdiction, that may be presented by the parties. Cf. Hans Smit, American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited, 25 Syracuse J. Int'l L. & Com. 1, 14 (1998) ("when a foreign or international tribunal has ruled that

14

production of the evidence pursuant to Section 1782 would not be appropriate, an American court should heed that ruling and deny the application").

In this case, however, the district court concluded, without any evidentiary showing, that granting the requested discovery would be offensive to the Spanish tribunal. When pressed at oral argument for an explanation why the Spanish court would be offended by the grant of Bayer's S 1782 application, counsel for BetaChem argued only that Bayer could have gone to the Spanish court to seek production of the BetaChem materials before coming to the United States and invoking S 1782. This fails to answer the question. Indeed, a "quasi-exhaustion requirement" of the kind advocated by BetaChem on appeal has been rejected by those courts that have addressed it. See, e.g., Malev Hungarian Airlines, 964 F.2d at 100.

In fact, the evidence presented to the district court strongly suggested receptivity by the Spanish court to the evidence sought by Bayer rather than offense. In dealing with different documents but of a similar type, Judge Amigo of the Court of First Instance issued a ruling on October 14, 1996, in Bayer's patent infringement action that the court would receive "any document that may be presented," although he reserved decision as to any document's admissibility. App. at 87-89. For its part, BetaChem produced no evidence from which the district court might have reasonably concluded that presentation of the material sought here would offend the Spanish court. Inasmuch as relevant evidence is presumptively discoverable under S 1782, the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application, should rest with the party opposing the application, here BetaChem.

In John Deere, we considered the testimony sought there to be discoverable in the foreign jurisdiction after noting simply that "the testimony sought would generally be subject to discovery were all the parties in Canada." 754 F.2d at 136 (emphasis added). Here, the parties' uncontested submissions make clear that the documents sought by Bayer would be subject to discovery in Spain

15

were all the parties located there. By insisting that the Spanish court make the materiality determination, the district court, in our view, insisted on too much. See generally, Metallgesellschaft, 121 F.3d at 80 (denying an application "because the foreign court had notfirst passed on the discoverability of the material sought" would contravene S 1782's purpose).

III.

Our discussion is not intended to suggest that Bayer is necessarily entitled to have its application granted. That determination will have to await the district court's proper exercise of its discretion on remand when it will be free to consider the relevance of factors not before us, such as the timeliness of Bayer's application and appropriate measures, if needed, to protect the confidentiality of the materials. For the reasons discussed above, we will vacate the order of the district court and remand for further proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

16