AHMAD HAMAD ALGOSAIBI &
BROTHERS COMPANY,
Petitioner,

v.

STANDARD CHARTERED INTERNA-
TIONAL (USA) Ltd., Bank of Amer-
ica, N.A., HSBC Bank USA, N.A., Citi-
bank N.A., Respondents.

No. 10 Civ. 8080(JSR).

United States District Court,
S.D. New York.

May 20, 2011.

Eric Lewis Lewis, Baach Robinson & Lewis PLLC, Washington, DC, for Petitioner.

Marc Joel Gottridge, Joanna Felice Wasick, Hogan Lovells U.S. LLP, Barry Jay Glickman, Zeichner Ellman & Krause LLP, Gregory Thomas Casamento, Lord, Bissell & Brook, LLP, R. James Jude De Rose, III, Lord, Bissell & Brook, LLP, New York, NY, for Respondents.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Petitioner Ahmad Hamad Algosaibi & Brothers Company ("AHAB") has petitioned the Court for an order of judicial assistance, pursuant to 28 U.S.C. § 1782, requiring respondents Standard Chartered International ("Standard Chartered"), formerly known as American Express Bank Ltd. ("AEB"), Bank of America, N.A. ("Bank of America"), HSBC Bank USA, N.A. ("HSBC"), and Citibank, N.A. ("Citibank") to provide AHAB with certain discovery relating to foreign proceedings—a proceeding in the Cayman Islands brought by AHAB (the "Cayman Proceeding") and proceedings in Saudi Arabia brought against AHAB by The International Banking Corporation ("TIBC") (the "Saudi Arabia Proceedings") (collectively, the "foreign proceedings"). In the Cayman Proceeding, petitioner alleges that one Maan Al Sanea through various entities within his control committed a massive fraud against AHAB by borrowing billions of dollars from over one hundred financial institutions and then misappropriating most of the funds and using the remainder of the funds to repay prior lending in order to maintain the Ponzi scheme. In the Cayman Proceeding, AHAB has brought the following causes of action against Al Sanea and his companies: conspiracy, deceit, breach of fiduciary duty, accounting, tracing, and restitution. In the Saudi Arabia Proceedings, TIBC alleges that AHAB has failed to make certain required payments to TIBC and has failed to transfer certain shares into TIBC's name. AHAB alleges that Al Sanea's companies maintained accounts with the respondent New York-based banks and that the respondents possess information that is relevant to the foreign proceedings.

For the reasons stated herein, the Court hereby grants ABAB's petition and permits AHAB to seek discovery from the respondent banks. However, recognizing that producing the requested discovery will likely be costly and burdensome, the Court orders petitioner to bear 100% of the costs of this discovery. With respect to the scope of discovery, the Court directs the parties to first confer with one another in an effort to reach agreement about the terms of discovery. In the event that parties are unable to reach agreement within one month from the date of this order, the parties are directed to convene a joint telephonic conference with the Court for further direction.

By way of background, petitioner AHAB, a general partnership established and headquartered in Saudi Arabia, is the exclusive bottler of Pepsi Cola products in the eastern province of Saudi Arabia. Mr. Al Sanea, who now resides in Saudi Arabia, married into the Algosaibi family before taking control of AHAB Money Exchange Commission and Investment (the

"Money Exchange") in 1981. His business interests outside of AHAB are held mostly through the Saad Group of companies. The principal vehicle for Saad Group's investments outside of Saudi Arabia is Saad Investments Company Limited ("SICL"). *See* Lewis Decl., Ex. G §§ 5, 8; Ex. H §§ 15, 24–26. In 2003 and 2004, Al Sanea created and registered two banks, Awal Bank ("Awal") and The International Banking Corporation ("TIBC"). TIBC was ostensibly owned by AHAB, but was allegedly controlled by Al Sanea without AHAB's knowledge.

One of AHAB's divisions was a discrete financial services business called the Money Exchange. The Money Exchange was formally a division of AHAB, but was allegedly run as a separate business with separate management, employees, operations, budget, audited balance sheets, and bank accounts. It was formed to provide remittance services and currency exchange. It also managed a portfolio of securities and operated a small American Express franchise. Al Sanea allegedly managed and controlled the Money Exchange from 1981 until May 2009, exercising complete control over the Money Exchange and effectively sealing off the Money Exchange and its staff from all communications with AHAB and its partners. *See* Lewis Decl. Ex. H §§ 2, 17–18.

In 2009, after an investigation by legal, accounting, and forensic advisors, AHAB established that it had been massively defrauded by Al Sanea and his companies. Beginning no later than 2000, Al Sanea allegedly had used AHAB's name to borrow billions of dollars from banks and other financial institutions using hundreds of forged documents without the consent or knowledge of AHAB or its individual partners. *See* Lewis Decl. Ex. H §§ 6, 12. As of May 2009, Al Sanea's outstanding borrowings totaled approximately $9.2 bil-

lion. *Id.* § 13. In order to obtain loans in AHAB's name, Al Sanea reportedly created forged documents purporting to reflect the signature of the Chairman of AHAB's Board of Directors. *Id.* § 12. Once loans were obtained, Al Sanea used some of the proceeds to pay back previously obtained loans to maintain the Ponzi scheme, while the remainder of the proceeds were transferred via the Money Exchange to the accounts of Saad Group companies, including SICL and its subsidiaries. *Id.* § 139.1–139.3. Al Sanea also allegedly fraudulently used Awal and TIBC to borrow money and make transfers via the Money Exchange. *See* Lewis Decl., Ex. D §§ 84–91, 97, 110.

As a result of Al Sanea's failure to make payment on the billions of dollars in loans he obtained in AHAB's name, many of the 118 financial institutions that extended credit to Al Sanea and the Money Exchange have demanded repayment by AHAB or its partners. *See* Lewis Decl., Ex. H § 166. AHAB maintains that all liability rests with Al Sanea and not with AHAB and thus has brought an action in the Cayman Islands against Al Sanea, SICL, and numerous other Cayman companies owned or controlled by Al Sanea for, *inter alia*, conspiracy, deceit, breach of fiduciary duty, accounting, tracing, and restitution. AHAB alleges that the entities allegedly utilized by Al Sanea—the Money Exchange, TIBC, Awal Bank, and SICL—maintained accounts with the respondents in this case. Specifically, AHAB alleges that the Money Exchange maintained an account with Bank of America; that TIBC maintained accounts with Standard Chartered, Bank of America, and HSBC; that Awal maintained accounts with Standard Chartered and HSBC; and that SICL maintained an account with Citibank. AHAB alleges that because Al Sanea's fraud involved the transfer and laundering of funds through New York

banks, the respondents likely possess key evidence relating to Al Sanea's scheme.

In addition to the action brought by AHAB in the Cayman Islands, there are two actions proceeding in Saudi Arabia where AHAB is named as a defendant. Specifically, TIBC has brought proceedings against AHAB in two Saudi tribunals: the Capital Market Authority and the Saudi Arabian Monetary Agency. In the proceeding before the Capital Market Authority, TIBC alleges that it purchased shares from AHAB in various companies that AHAB refuses to transfer into TIBC's name. In the proceeding before the Saudi Arabian Monetary Agency, TIBC alleges that AHAB entered into various foreign exchange transaction agreements with TIBC, but never made the required payments to TIBC. While AHAB contends that the Cayman Proceeding is most relevant to its petition in this case, it argues that various documents in the respondents' possession may also be helpful in defending the Saudi Arabian Proceedings.

In connection with the foreign proceedings, AHAB has made six requests for information. Specifically, AHAB seeks: "(1) all account statements, including deposition, loan, investment, securities, overdraft or any other type of accounting relationship; (2) all account opening materials, created or received at any time, including without limitation all documents relating to authority to open and/or operate the account, such as resolutions, powers of attorney, and signature cards; (3) any customer file (if applicable); (4) all documents concerning any loan or credit extended to the Customer;[1] (5) all materials concerning [respondent's] relationship with the Customer, including without limitation all in-ternal or external communications, memoranda, meeting or file notes concerning the account[s], Customer, or Customer relationship; (6) all due diligence materials, including without limitation 'know your customer' and anti-money laundering materials, applications, audits or other information relating to the business activities of the Customer."

"The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). In order to request discovery under this provision, three requirements must be satisfied. First, the respondent must reside (or be found in) the district of the district court to which the application is made. Second, the discovery must be "for use" in a proceeding before a foreign tribunal. Third, the application must be made by a foreign or international tribunal or "any interested person." *See* 28 U.S.C. § 1782(a); *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir.1998).

 If the statutory requirements are satisfied, the district court should then consider various discretionary factors in deciding whether to grant the petition. *See Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–66, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004). For example, the Supreme Court has noted that there is greater need for § 1782 aid when the respondent is a non-participant "because a foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence." *Id.* at 264, 124 S.Ct. 2466. The district court should also consider whether the petitioner's re-

---

1. AHAB defines "Customer" to mean one or a combination of the following persons/entities: AHAB, The Money Exchange, TIBC, Awal Bank, SICL, Maan Al Sanea, or any current or former owner, partner, director, officer, employee, agent, representative, or other person acting or purporting to act on the behalf of Al Sanea or any of the above-listed entities.

quest is "unduly intrusive or burdensome." *Id.* at 264–65, 124 S.Ct. 2466. In addition, as with discovery requests in domestic litigation, if a court "suspects that the [§ 1782 discovery] request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request." *In re Order Permitting Metallgesellschaft AG to Take Discovery,* 121 F.3d 77, 79 (2d Cir.1997).

■ Turning first to the three statutory requirements, the Court concludes that these threshold requirements are satisfied. There is no dispute that the first and third requirements are met. All of the respondents have offices and do business in Manhattan and thus "reside" in the Southern District of New York. And since AHAB is a party to both the Cayman Proceeding and the Saudi Arabian Proceedings, it is an "interested person" within the meaning of § 1782. *See Intel v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 256, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004) ("No doubt litigants are included among ... the interested persons who may invoke § 1782."). Thus, the only dispute concerns whether the requested discovery is "for use" in the foreign proceedings.

Pursuant to Fed.R.Civ.P. 26(b)(1), discovery is limited to "non-privileged matter that is relevant to any party's claim or defense." The respondents argue that the discovery AHAB seeks is not relevant to the foreign proceedings and thus that the discovery requested is not "for use" in a foreign proceeding. They contend that AHAB cannot connect its discovery request with a claim or defense in the foreign proceedings and note that almost none of the allegations in the complaints in the foreign proceedings mentions or concerns the respondents. However, the Court finds that, even if the complaints fail to specifically identify particular banks, it is clear that AHAB is alleging that Al

Sanea accomplished his fraud by channeling billions of dollars in loans and repayments through various bank accounts, including many New York bank accounts. Thus, in order to prove the underlying fraud, AHAB may very well need some of the bank documents it is requesting from respondents.

In addition to arguing that the discovery sought is not relevant to the proceedings, the respondents contend that AHAB's entire petition is merely a "fishing expedition" to gather information so it can launch future litigation against financial institutions and thus the discovery requested is not truly "for use" in the foreign proceedings. In support of this argument, the respondents primarily rely on written testimony that Eric Lewis, Esq., counsel for AHAB, provided to the United States House of Representatives Committee on Financial Services Subcommittee on Oversight and Investigations on September 28, 2010. Specifically, Mr. Lewis stated:

> Mr. Al Sanea employed American and British bankers who assisted in implementing the scheme. The fraud appears to have deprived its victims of more than $20 billion and involved funds transfers on a dizzying scale through the U.S. banking system. Yet there appear to have been no questions asked—not by banks, not by regulators, not by prosecutors—until the whole scheme collapsed ... The vast sums here—approximately $1 trillion in transfers through New York in aid of a $20 billion fraud—must raise fundamental concerns about the safeguards that have been put in place to prevent our banking institutions from becoming instrumentalities of terrorist financing or fraud or other financial crimes ... One would expect—indeed, one would demand—under applicable "know your customer" and anti-money laundering

and anti-terror finance rules, a very searching interrogation of this customer . . . .

*See* Casamento Decl., Ex. C at 1–3.

While it is, of course, possible that the discovery AHAB is requesting could be used for other purposes—including litigation against the respondents—that fact is irrelevant to the instant petition. Since the Court is satisfied that the documents AHAB is seeking are relevant to the foreign proceedings and "for use" in the foreign proceedings, the fact that AHAB may also be able to use the discovery in future litigation against the respondents is immaterial.

■ Having determined that the statutory requirements of § 1782 are satisfied, the Court now considers the discretionary factors. Certainly the fact that respondents are non-parties weighs in favor of granting the petition since, as non-parties to the foreign proceedings, the foreign courts could not themselves order respondents to produce the requested discovery. However, the arguably burdensome nature of AHAB's request weighs against granting the petition. For example, in AHAB's proposed subpoenas seeking various customer documents, AHAB, as noted, defines the word "Customer" very broadly to include, *inter alia,* "any current or former owner, partner, director, officer, employee, agent, representative, or other person acting or purporting to act on [the entity's] behalf." In addition, AHAB is not merely requesting documents from the last few years, but is requesting documents over an eleven year time period. The requested discovery may be especially burdensome for Standard Chartered (formerly AEB) because AEB voluntarily surrendered its banking licenses in 2008 after being acquired and ceased all banking activity. It thus has *no ongoing operations or employees* and claims that any AEB data responsive to AHAB's requests was created on "legacy computer systems" that are not currently maintained.

Notwithstanding the arguably burdensome nature of AHAB's petition, the Court recognizes that AHAB is litigating a complex fraud case and that, in order to establish that Al Sanea's allegedly fraudulent bank transfers occurred, AHAB may need documentation of the transfers from the respondent banks. Given AHAB's legitimate need for at least some of the requested materials, the Court hereby grants AHAB's petition. However, in view of the potentially substantial burdens on respondents that this grant entails, the Court further orders AHAB to bear 100% of respondents' costs of producing the discovery to AHAB.

With respect to the scope of discovery, the Court directs the parties to first confer in an attempt to agree upon reasonable discovery terms. If after one month from the date of this order, the parties are unable to reach agreement, they are directed to jointly call the Court for further direction.

Accordingly, the Court grants AHAB's petition to obtain discovery from the respondents for use in the foreign proceedings pending in the Cayman Islands and Saudi Arabia, but orders AHAB to cover the respondents' costs of providing the requested documents.

SO ORDERED.