Mees v. Buiter

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————————

August Term, 2014

(Argued: May 6, 2015    Decided: July 17, 2015)

Docket No. 14-1866

———————————

HELEEN MEES,

*Applicant-Appellant,*

— v. —

WILLEM H. BUITER,

*Respondent-Appellee.*[*]

———————————

B e f o r e:

LEVAL, LYNCH, and LOHIER, *Circuit Judges.*

———————————

———————————

[*] The Clerk is respectfully directed to amend the official caption as it appears above.

1

Applicant-appellant Heleen Mees appeals from a May 6, 2014 order of the United States District Court for the Southern District of New York (Loretta A. Preska, *C.J.*) denying her application to compel discovery from respondent-appellee Willem H. Buiter pursuant to 28 U.S.C. § 1782.  The district court denied the application on the ground that the materials sought were not "for use" in a foreign proceeding, as required by § 1782, because they were not necessary for Mees to draft an adequate complaint.  That conclusion was erroneous in two respects.  First, an applicant may satisfy the statute's "for use" requirement even if the discovery she seeks is not necessary for her to succeed in the foreign proceeding.  Second, the discovery need not be sought for the purpose of commencing a foreign proceeding in order to be "for use" in that proceeding.  That is so even where the applicant is a private litigant who has yet to commence the foreign proceeding for which discovery is sought, so long as the proceeding is within reasonable contemplation.  A § 1782 applicant satisfies the statute's "for use" requirement by showing that the materials she seeks are to be used at some stage of a foreign proceeding, and Mees has made such a showing.

VACATED AND REMANDED.

––––––––––––

OLAV A. HAAZEN, Grant & Eisenhofer P.A., New York, New York (Joshua J. Libling, Boies, Schiller & Flexner LLP, New York, New York, and Brooke A. Alexander, Boies, Schiller & Flexner LLP, Armonk, New York, *on the brief*), *for Applicant-Appellant* Heleen Mees.

ADRIENNE B. KOCH, Katsky Korins LLP, New York, New York (Joseph Weiner, Katsky Korins LLP, New York, New York, *on the brief*), *for Respondent-Appellee* Willem H. Buiter.

GERARD E. LYNCH, *Circuit Judge*:

Applicant-appellant Heleen Mees appeals from a May 6, 2014 order of the United States District Court for the Southern District of New York (Loretta A. Preska, *C.J.*) denying her application to compel discovery from respondent-appellee Willem H. Buiter pursuant to 28 U.S.C. § 1782. That statute permits a district court, "upon the application of any interested person," to order a person within its jurisdiction to "give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).[1] In her application and at oral argument before the

---

[1] Section 1782(a) reads, in part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a

district court, Mees explained that she sought discovery from Buiter to plead and to prove a contemplated defamation suit against him in her home country, the Netherlands. The district court denied the application on the ground that the materials sought were not "for use" in the Dutch proceeding, as required by § 1782, because they were not necessary for Mees to draft an adequate complaint.

That conclusion was erroneous in two respects. First, an applicant may satisfy the statute's "for use" requirement even if the discovery she seeks is not necessary for her to succeed in the foreign proceeding. Second, the discovery need not be sought for the purpose of commencing a foreign proceeding in order to be "for use" in that proceeding. That is so even where a § 1782 applicant is a private litigant who has yet to commence the foreign proceeding for which discovery is sought, so long as the proceeding is within reasonable

---

document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

contemplation. A § 1782 applicant satisfies the statute's "for use" requirement by showing that the materials she seeks are to be used at some stage of a foreign proceeding. Mees has clearly made such a showing.

We therefore VACATE the order denying her application and REMAND for the district court to reconsider the application in light of our conclusion that Mees has satisfied the "for use" requirement of § 1782.

**BACKGROUND**

Mees's application arose after Buiter made certain accusations against her to law enforcement, causing her to be arrested and charged in New York State Court with five misdemeanor counts of stalking, menacing, and harassment. The charging Information included an affidavit from Buiter stating that, since 2009, Mees had sent him thousands of emails and on several occasions attempted to meet him at his residence, despite numerous requests that she cease all contact with him. Buiter also stated that Mees's actions – including wishing that his "plane falls out of the sky" and sending him a picture of dead birds – caused him to fear for his safety. J.A. 72-73. The criminal complaint leading to Mees's arrest also contained an affidavit from a New York City Police Department detective reporting accusations against Mees made to him by Buiter. While the two

5

affidavits are similar, the detective's affidavit included a number of sexually explicit allegations omitted from Buiter's affidavit. On March 10, 2014, Mees accepted an Adjournment in Contemplation of Dismissal in her criminal case, pursuant to which the charges would be dismissed in one year if Mees completed counseling and complied with an order of protection for Buiter and his wife.[2] Due largely to Buiter's position as a prominent business and academic economist, the case and its racy details were widely reported by the press in both New York and the Netherlands.[3]

Mees filed her § 1782 application on March 28, 2014, seeking discovery from Buiter "as part of her Dutch attorneys' investigation of a defamation claim against Buiter" in the Netherlands, "and to prepare for the prosecution of such claim." J.A. at 7. The application asserted that Buiter's accusations were false and "foreseeably passed on to the media," and that re-publication of the accusations by the press had caused Mees to lose her job teaching economics at New York University, as well as other opportunities, and to suffer emotional

[2] At oral argument, the parties informed the Court that Mees has fulfilled these conditions and that the charges have been dismissed.

[3] Buiter is a native of the Netherlands but resides in New York and holds dual citizenship in the United Kingdom and the United States.

harm. Id. at 7-8. The application maintained that Mees's interest in Buiter was not unrequited, and that in fact she and Buiter had "regularly had romantic encounters" dating back to 2008. Id. at 9, 19. To support this assertion of a consensual relationship, the application included as exhibits over a dozen emails between Mees and Buiter. It sought discovery primarily of a range of materials that would corroborate Mees's claims of having met Buiter on 27 "Romantic Encounter Dates."[4] Id. at 19.

Lastly, the application included a declaration of Mees's Dutch attorney regarding Dutch procedural law. It stated that, in Dutch proceedings, a plaintiff has a "'duty to substantiate' the complaint" that is "particularly demanding, even among European 'fact pleading' systems." Id. at 108. The complaint is followed by the defendant's "statement of defense," after which a "plaintiff cannot presume to have an opportunity to supplement the facts" because "[t]here is no reply as of right." Id. at 110 (emphasis omitted). Thus, the declaration argued, it is important "to provide all information on the dispute at the beginning of the

[4] Among the categories of discovery Mees sought were hotel reservations, personal and corporate credit card statements, schedules, phone records, all emails or other communications to Mees or discussing Mees, and all emails that Buiter, his wife, or his attorney provided to law enforcement in connection with the charges against Mees.

process." Id. at 109 (emphasis omitted). The declaration also stated that the Dutch courts were receptive to discovery assistance from U.S. courts via § 1782.

Buiter opposed Mees's application and submitted a competing declaration from his Dutch attorney regarding the requirements of Dutch law. That declaration stated that, contrary to the declaration of Mees's attorney, the Dutch pleading standard "is not particularly high." Id. at 190. It disputed Mees's argument that she needed to present all her evidence in the complaint, stating that "[t]he obligation to disclose the relevant evidence is . . . limited to the evidence that is known to the plaintiff." Id. at 188 (emphasis omitted). It concluded that Mees "does not need the information she has requested in order to file [her] claim," because she "appears to already have" sufficient evidence to satisfy the Dutch pleading threshold. Id. at 190.

The district court held oral argument on the application on May 6, 2014. At that time, Mees emphasized that "the purpose [of her application] is dual": both "to get the evidence that is necessary to prove the case in Holland, and . . . to plead [that] case." Special App'x at 38. Buiter countered that Mees had failed to satisfy two of the statutory requirements for discovery under § 1782. First, he argued that Mees's potential defamation suit was not "within reasonable

8

contemplation," as required by the Supreme Court's decision in <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241, 259 (2004). Special App'x at 55. Second, he contended that "the failure to tie the discovery request to any actual need to meet Dutch pleading requirements is a failure to meet the [statute's] [']for use['] requirement." <u>Id</u>. at 56.

At the conclusion of oral argument, the district court rejected Mees's application from the bench. The court explained that the "the basis for [its] decision is the requirement that [the] discovery be required 'for use' in the foreign proceeding," <u>id</u>. at 59, and that the application was "denied primarily on the basis that the discovery is not necessary for use in a foreign proceeding," <u>id</u>. at 61. The court based that conclusion largely on the fact that Mees appeared already able to make detailed allegations regarding her relationship with Buiter, and possessed numerous emails and other materials to support those allegations.[5] Moreover, the court characterized as "conclusory" the argument of Mees's Dutch counsel that broad discovery was necessary to draft an adequate

---

[5] The court also noted that Mees had not submitted an affidavit stating that she did not already possess the emails and other communications between her and Buiter that her application sought.

9

complaint under Dutch law, id. at 60, and noted that even according to Mees's counsel the complaint need only "sum up the evidence," id. at 59.

Because the court based its decision on the application's failure to satisfy the "for use" requirement, it did not reach Buiter's argument that the defamation suit was not "within reasonable contemplation" under Intel. The court did, however, address some of the discretionary factors articulated in Intel and concluded that they weighed against granting the application. It found that the application "appear[ed] to be an attempt to circumvent the foreign proof-gathering restrictions, in that the extent of the discovery requested was far broader than that which appears to be available in the Dutch courts." Id. Relatedly, the court found that "the [discovery] requests[,] taken in the context of the Dutch discovery scope[,] . . . appear to be intrusive and burdensome." Id. Finally, it found that granting the application "would contravene U.S. policy" because the request "appear[ed] to be designed to attack collaterally the still pending criminal prosecution here in New York." Id.

After denying the application, the court explained that its ruling was "without prejudice to re-application if the Dutch courts indicate that additional material is necessary and for some reason the Dutch court is not able to order it

10

produced there." Id. at 61. On May 27, 2014, Mees timely appealed the order.

On June 24, 2014, Mees served Buiter and his wife with a summons and complaint for a defamation suit filed in the Netherlands.[6]

**DISCUSSION**

1. Applicable Law

We review de novo the district court's interpretation of the statutory requirements of § 1782. In re Edelman, 295 F.3d 171, 175 (2d Cir. 2002).

A district court has authority to grant a § 1782 application where: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012).

---

[6] Mees also filed a complaint against Buiter in New York State Supreme Court on August 25, 2014, asserting claims for defamation, false imprisonment, malicious prosecution, tortious interference with business relations, and intentional infliction of emotional distress. At oral argument, the parties informed the Court that the Dutch case is pending, with a discovery request to be heard in October of this year, and that a motion to dismiss is pending in the New York State Supreme Court action.

Once those statutory requirements are met, a district court may grant discovery under § 1782 in its discretion. Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83-84 (2d Cir. 2004).[7] "This discretion, however, is not boundless," but must be exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." Id. at 84 (internal quotation marks omitted).

In Intel, the Supreme Court identified four additional "factors that bear consideration in ruling on a § 1782(a) request." 542 U.S. at 264. These are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering

---

[7] Accordingly, where a district court denies a request for § 1782 discovery after finding the statutory requirements are met, we review such a denial for abuse of discretion. In re Edelman, 295 F.3d at 175.

restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." Id. at 264-65.

2.      The "For Use" Requirement

In concluding that Mees did not meet the "for use" requirement on the ground that the discovery she sought was not necessary to draft an adequate complaint, the district court erred in two respects.

First, discovery sought pursuant to § 1782 need not be necessary for the party to prevail in the foreign proceeding in order to satisfy the statute's "for use" requirement. The plain meaning of the phrase "for use in a proceeding" indicates something that will be employed with some advantage or serve some use in the proceeding – not necessarily something without which the applicant could not prevail. See Oxford English Dictionary, vol. XIX at 354 (2d ed. 1989) (defining "use" as "to employ . . . in some function or capacity, esp. for an advantageous end"); Webster's Tenth New Collegiate Dictionary 1301 (1998) (defining "use" as "the act or practice of employing something"). Notably, § 1782 makes no mention of necessity, and in several other contexts we and the Supreme Court have declined to read into the statute requirements that are not rooted in

13

its text.[8]

Moreover, a necessity requirement would be "unwise[,] as well as in tension with the aims of section 1782." Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099 (2d Cir. 1995). It would entail a painstaking analysis not only of the evidence already available to the applicant, but also of the amount of evidence required to prevail in the foreign proceeding. Such an inquiry would therefore "require interpretation and analysis of foreign law[,] and . . . 'comparisons of that order can be fraught with danger.'" Brandi-Dohrn, 673 F.3d at 82 (alteration omitted), quoting Intel, 542 U.S. at 263.[9] We have previously

---

[8] For example, in Intel the Supreme Court rejected a "foreign-discoverability" requirement, observing that "nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there." 542 U.S. at 260. Similarly, in Malev Hungarian Airlines v. United Techs. Int'l Inc., we rejected as "contrary [to] the plain language" of the statute a "quasi-exhaustion requirement" that the applicant first seek the discovery from the foreign court. 964 F.2d 97, 100 (2d Cir. 1992). And in Brandi-Dohrn, we held that § 1782 did not require that the discovery material be admissible in the foreign proceeding, on the ground that, "[a]s in Intel, there is no statutory basis for [such a] requirement." 673 F.3d at 82.

[9] We have expressed concern that such inquiries can become "a battle-by-affidavit of international legal experts, and result[] in . . . [a] superficial ruling on [foreign] law." Euromepa, 51 F.3d at 1099 (internal quotation marks omitted). That concern is illustrated by the case before us. Predictably, Mees's expert contended that Dutch pleading standards were "particularly demanding," J.A. at 108, while Buiter's expert maintained that they were "not particularly

14

rejected similarly "speculative forays into legal territories unfamiliar to federal judges," because "[s]uch a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the 'twin aims' of the statute." Euromepa, 51 F.3d at 1099-1100. Indeed, even in the context of our own laws, the question of who will ultimately prevail on what evidence can usually only be a subject of speculation at the pleading stage. Buiter identifies no countervailing concerns that might justify such a time-consuming and unreliable "necessity" inquiry. We have no reason to believe that Congress intended § 1782 to provide such parsimonious assistance, permitting discovery only when the applicant demonstrates she cannot do without it. Under § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success.[10]

_____

high," id. at 190. The two also gave conflicting accounts of the importance for a plaintiff of gathering all the evidence she will ultimately need to prove her case before she brings her complaint.

[10] Of course, a request that fails to show that the materials sought will be of any use in the foreign proceeding would not satisfy the "for use" requirement. Moreover, as discussed at greater length below, that a party has satisfied the "for use" requirement is not the end of a court's inquiry. A request that appears only marginally relevant to the foreign proceeding may in certain cases suggest that the application "is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials," Euromepa, 51 F.3d at

15

Second, even where a foreign proceeding has not yet begun, § 1782 discovery need not be used at all in drafting the complaint in order to satisfy the "for use" requirement. As noted above, Mees explained to the district court that her application served the dual purposes of helping her to plead *and to prove* her defamation claim. Special App'x at 38. Thus, in concluding that the discovery was not "for use" because it was not necessary to plead Mees's claim, without addressing whether the materials sought could be used to prove her claim, the district court implicitly concluded that any subsequent use of the discovery to prove her claim would not constitute "use" under § 1782. Such a conclusion is contrary to the language of the statute, which provides that discovery may be ordered "for use in a proceeding in a foreign or international tribunal." A "proceeding" means the entire proceeding, not merely its initial stage.

Indeed, in the typical § 1782 application, the applicant has already initiated a foreign proceeding and seeks discovery entirely to help her prove her claims, not to plead them. See, e.g., Brandi-Dohrn, 673 F.3d at 77; Euromepa, 51 F.3d at 1097. Buiter does not seriously contend on appeal that the discovery Mees seeks could not be used in the Dutch proceeding to help prove her claim. And he

_____

1101 n.6, which would be grounds for a discretionary denial of discovery.

16

acknowledges that, where a foreign proceeding is pending, seeking discovery to prove one's claims satisfies the "for use" requirement. But, he argues, where no foreign proceeding is pending an applicant can meet the "for use" requirement "only by showing that she could not commence such a proceeding without the discovery she sought." Appellee's Br. at 20.

Adopting that rule would undermine the holding of Intel that the foreign proceeding need not be pending, so long as it is "within reasonable contemplation."[11] 542 U.S. at 259. Intel gave no indication that courts should evaluate applications for proceedings within reasonable contemplation under a different framework from other applications by limiting them to discovery used to commence the proceeding. Rather, Intel explained that "[i]t is not necessary for the adjudicative proceeding to be pending at the time the evidence is sought,

---

[11] As noted above, the district court, in determining that the discovery was not "for use" in a foreign proceeding, did not address whether the Dutch lawsuit was within reasonable contemplation. The court's finding that Mees appeared to have sufficient evidence to bring an adequate complaint might weigh in favor of finding that the suit was within reasonable contemplation. But because Buiter does not pursue the issue on appeal, we need not decide it. Accordingly, we consider whether Mees satisfied the "for use" requirement, assuming that the defamation suit was within reasonable contemplation. At any rate, since Mees now has instituted an action in the Netherlands, the "within reasonable contemplation" issue is apparently moot.

but only that the evidence is *eventually to be used in such a proceeding*." Id. (emphasis added) (alterations and internal quotation marks omitted).[12] "[E]ventual[ ] . . . use[ ] in such a proceeding" plainly encompasses use at any point in the proceeding. And requiring an applicant to wait until the stage in the foreign proceeding at which the materials are to be used before applying for discovery under § 1782 – which might entail multiple, separate applications – would be contrary to the statute's aim of "providing efficient means of assistance to participants in international litigation." Brandi-Dohrn, 673 F.3d at 81 (internal quotation marks omitted).

Buiter seeks to distinguish Intel on the ground that it concerned an investigation "by an international tribunal[,] . . . not by a private individual attempting to assess the strength of his or her potential claims." Appellee's Br. at 20 (emphasis omitted). He notes that this Court has not previously considered whether Intel's "within reasonable contemplation" test applies to civil suits between private parties, and argues that foreign private litigants should not obtain pre-suit discovery through § 1782 that would ordinarily be unavailable in

---

[12] The Intel Court observed that a previous version of § 1782 required that the discovery be for use in a "pending" proceeding, but that Congress in 1964 amended the statute to delete that requirement. 542 U.S. at 258.

domestic litigation. But the statute indisputably provides for discovery requested either by a foreign or international tribunal or by a private litigant and does not articulate different standards for evaluating the two. And nothing in Intel limits its reasoning to investigations by a government or an international tribunal. In fact, Intel itself concerned a § 1782 application brought by a private corporation seeking discovery that it would then turn over to the investigating tribunal. Moreover, this Court has previously applied other aspects of Intel to suits between private parties without drawing Buiter's proposed distinction. See, e.g., Brandi-Dohrn, 673 F.3d at 82 ("extend[ing] [Intel] to the admissibility of evidence in [a] foreign proceeding" between two private parties); Schmitz, 376 F.3d at 84-85 (applying Intel discretionary factors in a suit between private parties).[13]

---

[13] We likewise reject Buiter's argument that, even assuming that § 1782 permits pre-suit discovery by private litigants, such discovery is limited to what is necessary to commence suit. For the reasons discussed above, necessity is not the appropriate standard. Nor would that standard address Buiter's concern that allowing such discovery would result in "unbounded" fishing expeditions by "would-be private litigants." Appellee's Br. at 19. On the contrary, under Buiter's proposed test, Mees's application would be denied precisely because she already possessed substantial evidence supporting her contemplated claim. It hardly seems a recipe for limiting fishing expeditions to deny assistance to applicants who can offer an evidentiary basis for their contemplated claims – thus making their claims more likely to be "within reasonable contemplation" –

We therefore hold that Mees has satisfied § 1782's "for use" requirement by showing that the materials she seeks are to be used at some stage of a foreign proceeding that was within reasonable contemplation at the time of the proceedings below. We note that the Fifth and Eleventh Circuits – our two sister courts to have considered whether discovery in aid of a contemplated foreign lawsuit brought by a private party may be "for use in a proceeding in a foreign or international tribunal" – have recently reached the same conclusion. See Bravo Express Corp. v. Total Petrochemicals & Refining USA, Inc., –– F. App'x —, 2015 WL 3466085, at *2-*3 (5th Cir. June 2, 2015);[14] Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262, 1270 (11th Cir. 2014).[15]

---

while finding the statutory requirement satisfied for those with little or no evidence.

[14] In Bravo Express, the petitioner sought discovery from the respondent for use in a contemplated lawsuit against a third party in the United Kingdom arising from environmental liability for an oil spill. The Fifth Circuit concluded, citing Intel, that the application satisfied the statutory requirements because the suit in the United Kingdom was within reasonable contemplation. 2015 WL 3466085, at *2.

[15] In Consorcio, a shipping company sought discovery under § 1782 for use in "contemplated civil and private criminal suits" in Ecuador against two of its former employees. 747 F.3d at 1265. The Eleventh Circuit rejected respondents'

20

Of course, this holding does not mean that Mees is necessarily entitled to discovery under § 1782. Once the statutory requirements are met, a district court may grant or deny the application in its discretion, bearing in mind the twin aims of the statute and the factors articulated in Intel. Brandi-Dohrn, 673 F.3d at 80-81.

3. Discretionary Factors

Although the district court found that some of the discretionary factors set out in Intel weighed against granting Mees's application, it explained that "the basis for [its] decision" was Mees's failure to satisfy the statutory "for use" requirement. Special App'x at 59. The district court did not state that, even assuming that the statutory requirements were met, it would in the alternative deny the application in its discretion.[16] Accordingly, we have interpreted the

contention that the discovery was not "for use in a proceeding in a foreign or international tribunal" because the contemplated lawsuit was not "such [a] proceeding." Id. at 1270. The court held that the "contemplated suits in Ecuador . . . satisfy the statutory requirements because, as the Supreme Court put it in Intel, the anticipated proceedings were 'within reasonable contemplation.'" Id. at 1265 (citation omitted).

[16] Even supposing that the district court could be understood to have done so, remand would still be appropriate because in this case it is possible that the district court's erroneous interpretation of the statutory requirements affected its assessment of the discretionary factors as well.

21

district court's order as denying the application on statutory grounds, and not as an exercise of its discretion.

Nevertheless, the parties – each contending that the discretionary factors compel a ruling in their favor – urge us to decide the application ourselves, rather than vacate and remand to the district court. We decline that invitation. The discretionary factors do not appear to us so one-sided that we should forgo the benefit of the district court's decision in the first instance. Such restraint seems all the more prudent because the circumstances surrounding the application have changed significantly since the district court's order – and in ways not fully briefed by the parties to this Court. Most notably, Mees has now commenced her defamation suit in the Netherlands. Thus, on remand Mees's application will take on the much more conventional posture of a party seeking discovery for use in an ongoing suit in a foreign court. Also, the criminal charges against Mees have now been dismissed, mooting the district court's concern that the application seemed "designed to attack collaterally the still pending criminal prosecution here in New York." Special App'x at 59.

While we decline to decide whether the application should be granted, we provide some observations regarding the district court's discussion of the

22

discretionary factors that may inform its analysis on remand. We turn first to the district court's finding that "the [discovery] requests[,] taken in the context of the Dutch discovery scope[,] . . . appear to be intrusive and burdensome." Id. That finding is problematic because whether a request is intrusive or burdensome should not be assessed based on the "discovery scope" available in the foreign proceeding. Few if any foreign jurisdictions permit the scope of discovery available in our courts. Consequently, "[i]f district courts were free to refuse discovery based upon its unavailability in a foreign court . . . § 1782 would be irrelevant to much international litigation, frustrating its underlying purposes." Metallgesellschaft AG v. Hodapp, 121 F.3d 77, 80 (2d Cir. 1997).[17] Rather, a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure. See In re Edelman, 295 F.3d at 179 ("Limits may be proscribed on [§ 1782] discovery or an existing order may be quashed under Rule 26(c).")

---

[17] Similarly, Intel explained that § 1782(a) does not "categorically bar a district court from ordering production of documents when the foreign tribunal or the 'interested person' would not be able to obtain the documents if they were located in the foreign jurisdiction." 542 U.S. at 259-60.

23

Furthermore, we have instructed that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." Euromepa, 51 F.3d at 1101; see also Malev, 964 F.2d at 102 (noting that § 1782 and Federal Rule of Civil Procedure 26 provide a district court with broad discretion to impose reasonable limitations upon discovery).[18] Thus, to the extent a district court finds that a discovery request is overbroad, before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery.[19]

---

[18] However, if a § 1782 application "is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application *in toto*, just as it can if discovery was sought in bad faith in domestic litigation." Euromepa, 51 F.3d at 1101 n.6. Here, the district court noted that Mees did not submit an affidavit stating that she did not possess the emails between her and Buiter. To the extent that the district court finds that Mees already possesses the materials sought in her application, that might support a determination that the application has "the purpose of harassment" or "seeks cumulative . . . materials." Id.

[19] We note that such concerns cannot always be cured through a limited discovery order. For example, in Schmitz we affirmed the district court's outright denial of discovery where "German authorities objected to any disclosure of [the relevant] documents," which were released to respondent "on the explicit condition that they would remain unavailable to anyone else." 376 F.3d at 85.

24

We turn next to the court's related finding that Mees's application "appear[ed] to be an attempt to circumvent the foreign proof-gathering restrictions, in that the extent of the discovery requested was far broader than that which appears to be available in the Dutch courts."  Special App'x at 59. Again, § 1782 contains no foreign-discoverability requirement.  While we have instructed that "district judges may well find that in appropriate cases a determination of discoverability under the laws of the foreign jurisdiction is a useful tool in their exercise of discretion under section 1782," Foden v. Gianoli Aldunate, 3 F.3d 54, 60 (2d Cir. 1993), that observation does not "authorize denial of discovery pursuant to § 1782 solely because such discovery is unavailable in the foreign court, but simply . . . allow[s] consideration of foreign discoverability (along with many other factors) when it might otherwise be relevant to the § 1782 application," Metallgesellschaft, 121 F.3d at 79.[20]  We do not understand the

_____

[20] There is some apparent tension in the precedent of the Supreme Court and this Court instructing that a § 1782 application should not be rejected on the ground that the discovery would not be available in the foreign proceedings, but that a district court should consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country," Intel, 542 U.S. at 265.  But these instructions, properly understood, are not inconsistent.  That a country does not enable broad discovery within a litigation does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means.  "[P]roof-gathering restrictions" are best

25

district court's analysis to be to the contrary, but note the issue to emphasize that the availability of the discovery in the foreign proceeding should not be afforded undue weight.

Lastly, we address the district court's statement that its ruling was "without prejudice to re-application if the Dutch courts indicate that additional material is necessary and for some reason the Dutch court is not able to order it produced there." Special App'x at 61. That statement is sound to the extent that it recognizes that a party may file a new application upon a significant change in circumstances. However, the statement is not correct to the extent it could be read to impose a necessity standard or an exhaustion requirement. As discussed above at length, the "necessity" of the materials sought is not a precondition for

---

understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information. Courts may also consider whether the "nature, attitude and procedures of that jurisdiction," Brandi-Dohrn, 673 F.3d at 80-81 (internal quotation marks omitted), indicate that it is receptive to assistance under § 1782, even if it does not provide for similar discovery itself. Thus, "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782 . . . would provide helpful and appropriate guidance to a district court in the exercise of its discretion." Euromepa, 51 F.3d at 1100. Here, however, Buiter does not contend that Dutch courts reject the use in litigation of materials obtained through § 1782.

discovery under § 1782. Furthermore, the district court's condition that the Dutch courts not be able to produce the discovery might be read to suggest that granting the application would be proper only if Mees had first tried and failed to obtain the discovery in the Dutch courts. We have rejected such a "quasi-exhaustion" requirement, reasoning that it "finds no support in the plain language of the statute and runs counter to its express purposes." Metallgesellschaft, 121 F.3d at 79. Relatedly, the district court should not condition discovery on an overt expression from the foreign court that it wants or needs the information. The text of the statute authorizes the district court to order discovery not only upon "request . . . by a foreign tribunal" but also "upon the application of any interested person," which Mees indisputably is.[21] And determining whether a foreign tribunal has a practice of notifying the parties or a foreign court that additional information is needed – rather than simply

---

[21] Indeed, in Intel the European Commission, the "foreign tribunal" in which the discovery was to be used, "stated in *amicus curiae* briefs to th[e] [Supreme] Court that it does not need or want the District Court's assistance" in ordering discovery under § 1782, 542 U.S. at 265, yet the Supreme Court did not indicate that the European Commission's position precluded granting the application.

dismissing the claim – would require the sort of inquiry into foreign procedure that is best minimized for § 1782 applications.  <u>See</u> <u>Euromepa</u>, 51 F.3d at 1099-1100.

## CONCLUSION

For the foregoing reasons, we VACATE the order of the district court and REMAND for reconsideration in light of our conclusion that the application satisfies the "for use" requirement of § 1782.