RICHARD J. SULLIVAN, UNITED STATES CIRCUIT JUDGE Sitting by Designation
Now before the Court is an application submitted by Hansainvest Hanseatische Investment-GmbH and various other entities ("Applicants") for an order to obtain discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782. (Doc. No. 1.) Applicants seek the production of documents by Cerberus Capital Management, L.P., J.C. Flowers & Co. LLC, and GoldenTree Asset Management LLP ("Respondents"). For the reasons set forth below, the application is GRANTED with respect to documents held by U.S. custodians, and with respect to documents held by foreign custodians only to the extent that the Applicants (1) assume the costs of the document production, including the costs of compliance with the EU General Data Protection Regulation ("GDPR") and other foreign data privacy laws and (2) indemnify Respondents against any foreign data privacy law breaches.
I. BACKGROUND
On July 2, 2018, Applicants submitted an ex parte application pursuant to 28 U.S.C. § 1782 for an order to obtain discovery for use in a foreign proceeding (the "Application"). (Doc. No. 1.) Specifically, Applicants seek permission to serve document subpoenas on Cerberus Capital Management, L.P., J.C. Flowers & Co. LLC, and GoldenTree Asset Management LLC in order to obtain documents to be used in a contemplated, but as-yet-uninitiated, action in Germany against HSH Nordbank AG ("HSH") regarding alleged violations of German law in connection with the sale of HSH to private investors. (Id. ) In a July 5, 2018 Order, the Court determined that Applicants had articulated no compelling need to proceed ex parte , directed Applicants to serve Respondents with a copy of the Application and supporting materials, and set a briefing schedule. (Doc. No. 5.) The Court held oral argument on the Application on September 7, 2018.
*248 II. DISCUSSION
A. Legal Standard
Section 1782 of Title 28 of the United States Code, entitled "Assistance to Foreign and International Tribunals and to Litigants before such Tribunals," provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). The statute authorizes district courts to grant such relief only where (1) the person from whom discovery is sought resides or is found in the district of the district court where the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by the foreign tribunal or "any interested person." Schmitz v. Bernstein Liebhard & Lifshitz, LLP , 376 F.3d 79, 83 (2d Cir. 2004) (citing In re Application of Esses , 101 F.3d 873, 875 (2d Cir. 1996) (per curiam) ).
For applications that meet the three statutory prerequisites, "Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to [ Section] 1782(a)." In re Application of Edelman , 295 F.3d 171, 181 (2d Cir. 2002) ; see also Schmitz , 376 F.3d at 83-84 (citing In re Application of Metallgesellschaft AG , 121 F.3d 77, 78 (2d Cir. 1997) ). "This discretion, however, is not boundless" and must be exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." Schmitz , 376 F.3d at 84 (quoting Metallgesellschaft , 121 F.3d at 79 ). Subsequently, the Supreme Court and lower courts have articulated several non-exclusive relevant considerations to further guide the discretion of district courts, including:
(1) Whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent [ Section] 1782 aid;
(2) The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;
(3) Whether the [ Section] 1782 request conceals a[n] attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and
(4) Whether the subpoena contains unduly intrusive or burdensome requests.
In re Application of Microsoft Corp. , 428 F.Supp.2d 188, 192-93 (S.D.N.Y. 2006) (citing Intel Corp. v. Advanced Micro Devices, Inc. , 542 U.S. 241, 264-65, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004) ).
B. Statutory Requirements
The parties do not contest that two of the three statutory prerequisites - that the respondents reside in or are found in the Southern District of New York, and that the application is made by an interested person - are satisfied here. The only statutory requirement in dispute is whether the discovery sought is "for use in a proceeding before a foreign tribunal." Schmitz , 376 F.3d at 83. Specifically, Respondents maintain that the Applicants have not established that a foreign proceeding is reasonably contemplated, while Applicants maintain that this prerequisite has been satisfied by the steps they have taken thus far to initiate litigation in Germany.
*249 The "for use" standard has undergone considerable evolution in the Second Circuit. After a 1964 amendment eliminated the requirement that the discovery be for use "in any judicial proceeding pending in any court in a foreign country" and replaced that language with the modern formulation, courts spawned a range of interpretations of the "for use in a proceeding" language. Pub. L. No. 80-773, 62 Stat. 869, 949 (1948), as amended by Pub. L. No. 81-72, 63 Stat. 89, 103 (1949) (emphasis added); see also Pub. L. No. 88-619, 78 Stat. 995, 997 § 9 (1964). The Second Circuit initially adopted a relatively stringent standard, requiring a proceeding to be "imminent - very likely to occur and very soon to occur." See In re Int'l Judicial Assistance for the Federative Republic of Brazil , 936 F.2d 702, 706 (2d Cir. 1991). In contrast, other Circuits implemented a more lenient standard. See, e.g. , In re Letter of Request from the Crown Prosecution Serv. of the U.K. , 870 F.2d 686, 691 (D.C. Cir. 1989) (requiring only that a proceeding be within reasonable contemplation). In 2004, the Supreme Court resolved the circuit split by rejecting the Second Circuit's approach. See Intel Corp. , 542 U.S. at 259, 124 S.Ct. 2466. Expressly stating that there is no requirement that a proceeding be "pending" or "imminent," the Court held "that [ Section] 1782(a) requires only that a dispositive ruling ... be within reasonable contemplation." Id. The Supreme Court further elaborated that "[i]t is not necessary ... for the [adjudicative] proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding." Id. (quoting Hans Smit, International Litigation Under the United States Code , 65 Colum. L. Rev. 1015, 1026(1965) ).
Following Intel , the Second Circuit has fleshed out the contours of the "reasonably contemplated" standard. In Mees v. Buiter , the Second Circuit took a broad view of Intel when it found that materials sought for use in a reasonably contemplated proceeding need not be necessary to the commencement of that proceeding; rather, they must merely "be [for] us[e] at some stage of a foreign proceeding that was within reasonable contemplation at the time" of the application. 793 F.3d 291, 301 (2d Cir. 2015). Nevertheless, to demonstrate that an action is within reasonable contemplation, "the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated." Certain Funds, Accounts and/or Inv. Vehicles v. KPMG LLP , 798 F.3d 113, 123 (2d Cir. 2015). The Second Circuit reasoned that "the Supreme Court's inclusion of the word 'reasonable' in the 'within reasonable contemplation' formulation indicates that the proceedings cannot be merely speculative. At a minimum, a [ Section] 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." Id. at 123-24.
Here, Applicants have set forth numerous indicia that litigation is contemplated, including hiring German litigation counsel, retaining experts, and sending a detailed demand letter to HSH, among others. (Doc. No. 4 ("Applicants' Br.") at 11, Doc. No. 28 ("Applicants' Reply Br.") at 1-2.) And, critically, Applicants' counsel made an affirmative representation at oral argument that the Applicants would file their litigation before the end of the year - an assertion that Respondents have not rebutted. (Doc. No. 34 (Transcript of Oral Argument) at 31:6.) While Respondents have attempted to frame the Application as a "fishing expedition" of the sort frequently denied by judges in this district, *250 see, e.g. , Ayyash v. Crowe Horwath LLP , 17-mc-482 (AJN), 2018 WL 2976017, at *3 (S.D.N.Y. June 13, 2018), the Court finds that, in light of the foregoing, this case does not fit the profile of a fishing expedition. If anything, Respondents' arguments suggest a "bluff" more than a "fishing expedition," given that the contours of the potential litigation are already well-defined. However, in light of Applicants' affirmative representation at oral argument of their intent to file the German action, Respondents can no longer maintain that the action is a mere bluff.[1] Given that representation and the objective indicia of contemplated litigation demonstrated by Applicants, the Court is persuaded that Applicants have demonstrated the concrete basis required to show that the German litigation is "more than just a twinkle in counsel's eye," and that therefore Intel 's"reasonable contemplation" standard has been satisfied.
Because the statutory prerequisites have been satisfied, the Court now turns to the discretionary factors.
C. Discretionary Factors
1. Foreign Tribunal's Jurisdictional Reach
The First discretionary factor asks the Court to evaluate whether the documents or testimony sought by the Application are within the foreign tribunal's jurisdictional reach, and thus accessible absent resort to Section 1782. Microsoft , 428 F.Supp.2d at 192-93 ; see also Intel , 542 U.S. at 264-65, 124 S.Ct. 2466. Here, Respondents are currently not parties to the contemplated proceeding. Accordingly, since "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach ... their evidence, available in the United States, may be unobtainable absent [ Section] 1782(a) aid." Intel , 542 U.S. at 264, 124 S.Ct. 2466. Moreover, while it is possible that Respondents could become parties to the proceeding in the future, see Applicant's Br. at 13 n.12, that possibility is characteristic of virtually all Section 1782 applications involving a reasonably contemplated, rather than pending, proceeding. Given the Supreme Court's interpretation of the reasonably contemplated standard, the mere possibility that a third party may ultimately be named in the litigation does not justify denying a third-party subpoena pursuant to Section 1782. See Mees , 793 F.3d at 298 (stating that the Second Circuit "and the Supreme Court have declined to read into [ Section 1782 ] requirements that are not rooted in its text.")
Furthermore, "the weight of authority in this district" supports the view that "the relevant inquiry is whether the foreign tribunal has the ability to control the evidence sought and order production, not whether the tribunal has control over the party targeted by" the application. In re Ex Parte Application of Porsche Automobil Holding SE , 15-mc-417 (LAK), 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016). Thus, even if - as Respondents contend - many of the documents sought are in the possession of HSH, which will be a party in the contemplated litigation, the limitations of German discovery would nevertheless counsel in favor of providing Section 1782 assistance. See, e.g. , id. at *7-8. Accordingly, the first Intel factor weighs in favor of granting the application.
2. Receptivity of the Foreign Government
The second discretionary factor requires district courts to inquire into the nature of the foreign proceedings and the *251 "receptiveness" of the foreign tribunal to United States court assistance. Microsoft , 428 F.Supp.2d at 194 (citing Intel , 542 U.S. at 264, 124 S.Ct. 2466 ). The burden is on Respondents to furnish "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782." Euromepa S.A. v. R. Esmerian, Inc. , 51 F.3d 1095, 1100 (2d Cir. 1995). Here, Respondents offer no evidence to suggest that a German court would be unreceptive to Section 1782 assistance, and it is undisputed that courts routinely grant Section 1782 applications for proceedings in Germany. See, e.g. , Heraeus Kulzer, GmbH v. Biomet, Inc. , 633 F.3d 591, 596 (7th Cir. 2011). Thus, this factor is either neutral or - in light of the willingness of courts to grant Section 1782 applications for purposes of German litigation - cuts in favor of granting the Application.
3. Circumvention of Foreign Proof-Gathering Restrictions
The third discretionary factor seeks to identify "attempt[s] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Microsoft , 428 F.Supp.2d at 192-93 (citing Intel , 542 U.S. at 264-65, 124 S.Ct. 2466 ). However, Section 1782"contains no foreign-discoverability requirement." Mees , 793 F.3d at 303 (2d Cir. 2015). Indeed, "nothing in the text of [ Section] 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there." Intel , 542 U.S. at 260, 124 S.Ct. 2466. Thus, to demonstrate circumvention, Respondents must illustrate not merely that the requested documents are not obtainable through German procedures, but that Applicants are engaged in a bad faith endeavor to misuse Section 1782.
Respondents primarily rely on the fact that the "locus" of this action is in Germany to suggest that Applicants are engaged in an end run around German law. (Doc. No. 19 ("J.C. Flowers Br.") at 16 (citing In re Application of Kreke Immobilien KG , No. 13-mc-110, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013).) ) However, Section 1782 contains neither a foreign-discoverability nor an exhaustion requirement, and such requirements would seem to undermine the statute's very purpose. Actions like the German lawsuit anticipated here are precisely the types of proceedings contemplated by the statute, which is designed to promote the "twin aims" of "providing efficient means of assistance to participants in international litigation in our federal courts" and "encouraging foreign countries by example to provide similar means of assistance to our courts." Schmitz , 376 F.3d at 84 (quoting Metallgesellschaft , 121 F.3d at 79 ). In light of those "twin aims," the fact that litigation is primarily foreign in nature cannot, standing alone, justify denial of a Section 1782 application. Put simply, the Court is not persuaded that Applicants have engaged in any improper or bad faith evasion of German procedures. Accordingly, the third factor supports granting the Application.
4. Burdensomeness
The final discretionary factor asks courts to be mindful of overly intrusive or burdensome discovery requests. Microsoft , 428 F.Supp.2d at 192-93 (citing Intel , 542 U.S. at 264-65, 124 S.Ct. 2466 ). "[A] district court evaluating a [ Section] 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." Mees , 793 F.3d at 302. Furthermore, the Second Circuit has instructed that "it is far preferable *252 for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." Euromepa , 51 F.3d at 1101 ; see also Malev Hungarian Airlines v. United Techs. Int'l, Inc. , 964 F.2d 97, 102 (2d Cir. 1992) (observing that Section 1782 and Federal Rule of Civil Procedure 26 furnish district courts with broad discretion to impose reasonable limitations upon discovery).
Here, Respondents raise a host of objections to the scope of the Application, arguing that it is unduly burdensome because Applicants seek broad discovery on a wide range of topics across a significant time period and because many of the documents are located in Europe, entailing logistical difficulties and exposure to foreign data privacy laws. (J.C. Flowers Br. at 17-24, Doc. No. 22 ("Cerberus Capital Br.") at 2-3, Doc. No. 18 ("Goldentree Asset Management Br.") at 3.) Applicants maintain that the proposed subpoenas are narrowly tailored to specific claims, with any specific objections to breadth better addressed through request-by-request conferral rather than by denying the Application at the outset. (Applicants' Reply Br. at 8-9.)
The Court agrees with Applicants and rejects Respondents' assertion that the contemplated status of the German litigation "renders [Applicants] unable to narrowly tailor their requests, as they must." (J.C. Flowers Br. at 19.) Because the Supreme Court has upheld Section 1782 applications for reasonably contemplated, and not necessarily imminent, proceedings, it simply cannot be required that Applicants must bring their claims prior to their application. And while the Court is sensitive to the significant costs entailed by the requested discovery here, the Court - mindful of the Second Circuit's guidance regarding the undesirability of wholesale denials of Section 1782 applications on the basis of burdensomeness - draws upon its broad discretion to place limitations on that discovery and thereby mitigate any burdensomeness concerns. Therefore, while the application is granted in its entirety with respect to documents held by U.S. custodians, the Court grants the application with respect to documents held by foreign custodians only to the extent that the Applicants (1) assume the costs of the document production, including the costs of compliance with the GDPR or other applicable European data privacy laws and (2) indemnify Respondents against any potential breaches of European data privacy laws.[2] Moreover, nothing in the Court's ruling precludes Respondents from filing overbreadth objections to subpoenas, which would permit further tailoring on a per-request basis. The Court is persuaded that this targeted approach will further the "twin aims" of the statute while encouraging a surgical approach to discovery.
III. CONCLUSION
For the foregoing reasons, the Court finds that the statutory requirements of Section 1782 have been satisfied and that the discretionary factors weigh in favor of Applicants. Accordingly, IT IS HEREBY ORDERED THAT the Application is GRANTED, with the limitations delineated above. The Clerk of Court is respectfully *253 directed to terminate the motion pending at Doc. No. 1 and to close this case.
SO ORDERED.

Of course, should counsel's representation at oral argument prove false, such misrepresentations could be sanctionable pursuant to Federal Rule of Civil Procedure 11.

While some judges have found that Section 1782 does not extend to documents located abroad, see, e.g. , In Re Godfrey , 526 F.Supp.2d 417, 423 (S.D.N.Y. 2007), the Court joins those courts that have declined to read this atextual limitation into the statute, see e.g. , Sergeeva v. Tripleton Int'l Ltd. , 834 F.3d 1194, 1200 (11th Cir. 2016) ; In re Accent Delight Int'l Ltd. , 16-mc-125 (JMF), 2018 WL 2849724, at *4 (S.D.N. Y. June 11, 2018).