19-4339(L)
*Sampedro v. Silver Point Capital, L.P.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of June, two thousand twenty.

PRESENT:
> RALPH K. WINTER,
> RICHARD C. WESLEY,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

_____

Luis Javier Martinez Sampedro,

    *Movant-Appellant-Cross-Appellee*,

     v.                        Nos. 19-4339-cv,
                                   20-8-cv, 20-29-cv

Silver Point Capital, L.P., Contrarian Capital Management, LLC, David Reganato, Norman Raul Sorensen Valdez,

*Respondents-Appellees-Cross-Appellants.*

_____

FOR MOVANT-APPELLANT-
CROSS-APPELLEE:

VINCENT LEVY, Holwell Shuster & Goldberg LLP, New York, NY (Scott M. Danner, Holwell Shuster & Goldberg LLP, New York, NY, Sean M. Fisher, Brenner, Saltzman & Wallman LLP, New Haven, CT, *on the brief*).

FOR RESPONDENTS-APPELLEES-
CROSS-APPELLANTS:

DUANE L. LOFT (Andrew Villacastin, *on the brief*), Boies Schiller Flexner LLP, New York, NY, *for Respondents-Appellees-Cross-Appellants* Silver Point Capital, L.P., Contrarian Capital Management, LLC, and David Reganato.

Jason C. Hegt, Latham & Watkins LLP, New York, NY, *for Respondent-Cross-Appellant* Norman Raúl Sorensen Valdez.

Cross-appeals from the United States District Court for the Southern District of New York (Janet Bond Arterton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Movant-Appellant-Cross-Appellee Luis Javier Martinez Sampedro

("Sampedro") appeals from a December 27, 2019 order of the United States District Court for the District of Connecticut (Arterton, *J.*) overruling, in relevant part, Sampedro's objections to an order by the magistrate judge (Spector, *M.J.*). Specifically, Sampedro challenged the magistrate judge's denial of his motion to compel production of documents withheld on privilege grounds from Silver Point Capital, L.P. ("Silver Point"), Contrarian Capital Management, LLC ("Contrarian"), and David Reganato (together, the "Fund Respondents"). Together with Norman Raúl Sorensen Valdez ("Sorensen," and with the Fund Respondents, "Cross-Appellants"),[1] the Fund Respondents cross-appeal from the district court's July 30, 2019 order granting Sampedro permission to provide discovery – which he obtained under 28 U.S.C. § 1782 for use in a litigation in a Spanish commercial court (the "Spanish Litigation") – to the Comisión Nacional del Mercado de Valores ("CNMV"), a Spanish regulatory authority. We assume the parties' familiarity with the underlying facts, procedural history, and issues on

---

[1] Sorensen is not implicated in the part of the district court's order that Sampedro appeals in his opening brief. However, he joins the Fund Respondents' brief as to the argument that the district court erred in allowing the continued availability of section 1782 discovery, and as to the Fund Respondents' cross-appeal.

appeal, to which we refer only as necessary to explain our decision.

We review the district court's denial of discovery under 28 U.S.C. § 1782 for abuse of discretion. *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018). A district court abuses its discretion if "it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *United States v. Vilar*, 729 F.3d 62, 82 (2d Cir. 2013) (internal quotation marks omitted).

## I.     Continued Availability of Section 1782 Discovery

As a threshold matter, we conclude that the district court did not abuse its discretion in permitting section 1782 discovery to continue and in considering Sampedro's motion to compel documents withheld for privilege in the section 1782 proceeding. For the district court to have authority to grant an application under section 1782, the statute requires, among other things, that "the discovery is for use in a foreign proceeding before a foreign [or international] tribunal." *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (alteration in original) (internal quotation marks omitted). Sampedro's initial application under section 1782 requested

4

discovery "for use" in the Spanish Litigation. Subsequently, the court in the Spanish Litigation (the "Spanish Court") denied Sampedro's request to introduce into evidence documents obtained from the section 1782 proceeding, stating that "the documents . . . are not considered necessary, nor useful, nor pertinent," in light of "the abundant documentary evidence that already exists in the proceedings." App'x at 1218. Cross-Appellants argue that the Spanish Court's decision denying the admission of those documents rendered the section 1782 discovery no longer "for use" in the foreign proceeding on which Sampedro's application was based. We disagree.

As our precedents make clear, discovery need not be admissible to be "for use" in a litigation, as "there is no statutory basis for [such a] requirement." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012); *see also Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 122 (2d Cir. 2015). Regardless of whether a foreign tribunal may deny admission of a document in the future, or whether it already has, "[t]he plain meaning of the phrase 'for use in a proceeding'" remains unchanged. *Mees*, 793 F.3d at 298. That phrase simply "indicates something that will be employed with some

5

advantage or serve some use." *Id.* Thus, the district court did not abuse its

discretion in determining that, because Sampedro will still "prepare witnesses,

craft questions, and present his case" in the ongoing Spanish Litigation, he would

have the opportunity "to place a beneficial document – or the information it

contains – before a foreign tribunal." Special App'x at 71 (citing *In re Accent

Delight Int'l Ltd*, 869 F.3d 121, 131 (2d Cir. 2017)).

## II.    Adequacy of Fund Respondents' Privilege Log

Sampedro argues that the Fund Respondents failed to carry their burden of

asserting attorney-client privilege, and that the district court's acceptance of the

Fund Respondents' belated privilege log is inconsistent with this Court's decision

in *United States v. Construction Products Research, Inc.*, 73 F.3d 464 (2d Cir. 1996).

We disagree.

"To facilitate its determination of privilege, a court may require an

adequately detailed privilege log in conjunction with evidentiary submissions to

fill in any factual gaps." *Constr. Prods. Research*, 73 F.3d at 473 (internal quotation

marks omitted). The log should identify each document and the individuals on

the communications to sufficiently allow the court to determine if the document is

6

"at least potentially protected from disclosure." *Id.* (internal quotation marks omitted).

In *Construction Products*, we upheld the district court's finding that a privilege log was deficient where the log contained generic descriptions. But we did so in light of the "particularly . . . glaring absence of any supporting affidavits or other documentation" that would justify an assertion of privilege. *Id.* at 474. Here, by contrast, Fund Respondents submitted "supplemental fact declarations from Respondents' witnesses;" further, the magistrate judge "worked extensively with the parties in this litigation," presided over two hearings at which Fund Respondents provided additional detail about log entries, and conducted "its own *in camera* review of hundreds of documents." Fund Respondents' Br. at 33–34 (internal quotation marks omitted); *see also* Special App'x at 11. On this record, we cannot say that the district court abused its discretion in accepting the log.

## III.   Director Documents

Turning to the merits, Sampedro challenges the Fund Respondents' assertion of privilege over communications between Linklaters and the directors of Codere – excluding Sampedro and his brother – regarding the brothers'

termination ("Director Documents"). Sampedro argues that because he was a director on the dates of those communications, he was within the privilege and should have access to the documents. We disagree.

First, we are unpersuaded by the federal common law Sampedro cites in support of his position. We recognize that district courts within this Circuit have acknowledged the general "doctrine that treats a director and a corporation as 'joint clients' of the company's attorneys for purposes of privilege claims." *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 104 (S.D.N.Y. 2009); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa S.S. Co.*, 232 F.R.D. 191, 197 (S.D.N.Y. 2005). Analogizing from law governing "joint clients"– which allows clients who are represented by the same attorney and share a common interest to assert privilege over information disclosed amongst themselves against the "outside world," but not against each other if they later become adverse – these courts have found that "as a general matter, a corporation cannot assert the privilege to deny a director access to legal advice furnished to the board during a director's tenure." *Newmarkets Partners*, 258 F.R.D. at 104 (internal quotation marks omitted). But it was not error to conclude that the

8

general rule did not apply here, where only a subset of the board retained Linklaters for the specific purpose of obtaining legal advice related to terminating the Sampedro brothers. Indeed, under such circumstances, the considerations animating the joint client analogy are not present. Linklaters did not act for all directors in common, and the information being sought was never previously furnished to the adverse directors.

Nor do we find error in the district court's conclusion that "open adversity" was not required for the directors to invoke attorney-client privilege against the Sampedro brothers. Sampedro cites no binding precedent in this Circuit in support of his position, largely looking to Delaware law instead. But even if Delaware law were controlling, the rationale for requiring open adversity does not apply here. *See In re CBS Corp. Litig.*, No. CV 2018-0342-AGB, 2018 WL 3414163, at *5–6 (Del. Ch. July 13, 2018) (explaining that the privilege inquiry considers whether the excluded directors could "have had a reasonable expectation that they were clients of [the company's disclosed counsel] at a given time").

In this case, the magistrate judge reasonably concluded that "[a] subset of the board, not including the Martinez Sampedro brothers, were the clients."

9

Special App'x at 11–12. Accordingly, Sampedro could not have had a reasonable expectation that Linklaters was representing his interests. Indeed, the record suggests that Sampedro was not aware of Linklaters's representation until it was revealed during this litigation; certainly, Linklaters never represented Sampedro or his brother. The district court therefore did not err in declining to apply the privilege rules urged by Sampedro.

## IV. G3M Documents

Sampedro also seeks access to communications, which were reviewed *in camera*, involving G3M, a third-party consulting firm retained by Codere. Sampedro argues that G3M's involvement in the communications broke the attorney-client privilege, and that the district court erred in denying his motion to compel production of these documents.

When a communication is "made in confidence for the purpose of obtaining legal advice from the lawyer," the inclusion of a third party on that communication does not necessarily destroy the attorney-client privilege, so long as the inclusion is "necessary, or at least highly useful, for the effective consultation between the client and the lawyer." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).

10

"[C]ommunications by the client" to his counsel and a third-party "reasonably related to [the] purpose" of having the third-party "interpret [the communications] so that the lawyer may better give legal advice" remain protected. *Id.* However, the privilege does not extend to communications where the third party merely provides additional "information [the client] did not have" for the lawyer to "advise his client . . . about the legal and financial implications" of an action. *United States v. Ackert*, 169 F.3d 136, 138–40 (2d Cir. 1999).

We find nothing in the record to suggest that the magistrate judge misapplied the law when reviewing documents *in camera*. Fund Respondents submitted an affidavit stating that G3M "was essential in interpreting" "large quantities of data" regarding "Codere's business, financial performance, and organizational structure," and "was indispensable in . . . interpreting Codere's financial [and organizational] data" so that Linklaters could tailor its legal advice. Sampedro Br. at 43–44. This supports the conclusion that G3M served a specialized purpose akin to an accountant who deciphers financial information so that the lawyer can effectively counsel the client. *See Kovel*, 296 F.2d at 922. And

11

because G3M is described as clarifying Codere's data for Linklaters – i.e., "as a translator or interpreter of client communications" – its role is distinct from the banker's in *Ackert*, where the in-house counsel sought out the banker to gain "information [the client] did not have." 169 F.3d at 139–40. Accordingly, Sampedro's argument fails.

## V.      Leave to Disclose Section 1782 Discovery to the CNMV

Cross-Appellants appeal the district court's determination permitting Sampedro to disclose section 1782 discovery to the CNMV. Specifically, Cross-Appellants contend that the magistrate judge erred in finding that the CNMV process constituted a "proceeding" under section 1782.

But "[s]ection 1782(a) does not limit the provision of judicial assistance to `pending' adjudicative proceedings;" rather, a proceeding needs only to be "within reasonable contemplation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258–59 (2004). Given the district court's factual findings regarding the CNMV process, we find no basis to disturb its ruling.

As the district court noted, "[t]he parties [did] not dispute that an ongoing CNMV sanction proceeding would constitute a 'proceeding.'" Special App'x at

12

67. Accordingly, the inquiry turned on "whether the CNMV has in fact initiated a sanction proceeding or has at least taken sufficient steps to put such a proceeding 'within reasonable contemplation.'" *Id.* (quoting *Intel*, 542 U.S. at 259). Relying on an affidavit submitted by Cross-Appellants, the magistrate judge found that Sampedro's filing of a complaint triggered a preliminary review that would result in the CNMV deciding whether to "initiate a sanctioning proceeding, the outcome of which would be reviewable by a Spanish court." *Id.* at 69. Because the review was pending and the CNMV had not "informed the Petitioner that there are insufficient grounds to initiate a sanctioning procedure or that otherwise it will not investigate," the magistrate judge reasonably concluded that a proceeding was "within reasonable contemplation." *Id.* (internal quotation marks omitted).

## VI.    Conclusion

We have reviewed the remainder of the parties' arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court

13