**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-2268

In re: APPLICATION OF NEWBROOK SHIPPING CORPORATION AND FALCON CONFIDENCE SHIPPING LTD.

NEWBROOK SHIPPING CORPORATION; FALCON CONFIDENCE SHIPPING LTD.,

                        Petitioners - Appellees,

        v.

GLOBAL MARKETING SYSTEMS, INC.

                        Respondent - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. James K. Bredar, Chief District Judge. (1:20-mc-00150-JKB)

Argued: October 29, 2021                    Decided: April 20, 2022

Before MOTZ, DIAZ, and RICHARDSON, Circuit Judges.

Vacated and remanded by published opinion. Judge Richardson wrote the opinion, in which Judge Motz and Judge Diaz joined.

**ARGUED:** Donald James Walsh, WRIGHT, CONSTABLE & SKEEN, LLP, Baltimore, Maryland, for Appellant. Amanda Elizabeth Finley, SEQUOR LAW, P.A., Miami, Florida, for Appellees. **ON BRIEF:** Morgan T. Dilks, WRIGHT, CONSTABLE &

SKEEN, LLP, Baltimore, Maryland, for Appellant. Gregory S. Grossman, SEQUOR LAW, P.A., Miami, Florida; Jodie E. Buchman, Pierce C. Murphy, SILVERMAN THOMPSON SLUTKIN WHITE, Baltimore, Maryland, for Appellees.

---

RICHARDSON, Circuit Judge:

Nadella Corporation bought a ship, the MV *Falcon Carrier*, for scrap from Falcon Carrier Shipping Limited. Unbeknownst to Nadella, the ship was encumbered by $368,000 of debt. To recover that debt, the debt holder "arrested"[1] Nadella's new ship. Nadella then tried to recover that debt from the ship's seller Falcon Carrier Shipping. These efforts have led to actual or planned legal action in four countries across multiple continents and the arrest of two other ships. In the latest legal flare up, Newbrook Shipping—the owner of those two ships arrested by Nadella—sued Nadella in South Africa and was considering another lawsuit in Nevis, a small island nation in the Caribbean. To support those actions, Newbrook applied in Maryland federal court for an ex parte order under 28 U.S.C. § 1782 authorizing discovery from Nadella's purported parent company, Global Marketing Systems. The district court seemed to reject discovery for the speculative "proceeding" in Nevis but then granted the full application.

---

[1] Admiralty disputes often involve harm on the high seas or in multiple jurisdictions, and ship ownership can be uncertain. Because this confusion can make recovery difficult in a normal legal proceeding, liability can attach to the ship itself. *Perez & Compania (Cataluna), S.A. v. M/V Mexico I*, 826 F.2d 1449, 1451 (5th Cir. 1987). Parties allegedly harmed by the ship, such as those bringing claims for maritime torts or contract breaches, are said to have a "maritime lien" on the ship (or its cargo), and the maritime lien "confer[s] the right to sue the vessel itself *in rem*." *Bank One, La. N.A. v. Mr. Dean MV*, 293 F.3d 830, 832 (5th Cir. 2002); *see Amstar Corp. v. S/S Alexandros T.*, 664 F.2d 904, 908–09 (4th Cir. 1981); Barry Hunsaker, Jr., *Due Process in Admiralty Arrest and Attachment*, 56 Tex. L. Rev. 1091, 1093 (1978). These liens are enforced by "arresting" ships. In America, when a plaintiff files a complaint in federal court asserting a maritime lien through an *in rem* proceeding against the ship, "the clerk of the admiralty court issues a warrant for the arrest of the property and delivers it to the marshal for service." Hunsaker, *supra*, at 1095 (citing Fed. R. Civ. P. supp. rule C(3)). The marshal then seizes the ship as security to ensure payment from the ship's owner. Fed. R. Civ. P., supp. rule C(3)–(4). Similar procedures exist, as relevant here, in Bangladesh and South Africa.

Global Marketing argues that the district court substantively erred in granting the entire application for discovery. Global Marketing also argues that the district court erred in approving service of process. We agree, vacating and remanding for further proceedings consistent with this opinion.

## I.    Background

### A.    The MV *Falcon Carrier*'s sale

In 2013, Falcon Carrier Shipping Limited sold the MV *Falcon Carrier* ("*Carrier*") to the Nadella Corporation. In doing so, Falcon Carrier Shipping warranted that the *Carrier* was free from liabilities and debts and agreed to indemnify Nadella for any claims. Nadella, a Nevis corporation owned by Global Marketing, bought the *Carrier* for scrap.

### B.    The MV *Falcon Carrier*'s arrest

After Nadella bought the *Carrier*, another company, Samchira, arrested the *Carrier* in the Supreme Court of Bangladesh. That action sought to recover around $368,000 of pre-sale debt associated with the ship. As a result, Nadella sought recovery for breach of contract from Falcon Carrier Shipping. That breach-of-contract claim is now being arbitrated in Singapore.

### C.    The MV *Falcon Traveller*'s arrest

As security for its claim against Falcon Carrier Shipping, Nadella also began arrest proceedings in South Africa against a different ship, the MV *Falcon Traveller* ("*Traveller*"). The *Traveller* was owned by Newbrook. But Nadella argued that, despite this nominal difference in ownership, the *Traveller* and the *Carrier* were indirectly owned

4

by the same person and so were "associated" vessels under South African law.[2] But a South African court disagreed, even though it found the assertion to be "subjectively honest." The court determined that Falcon Carrier Shipping (and thus, before Nadella's purchase, the *Carrier*) was owned by Nico Poons, while Newbrook (and thus the *Traveller*) was owned by Nico's father Ronald Poons. Because the two ships were not "associated," Nadella could not arrest the *Traveller* to cover losses from the bad deal it got on the *Carrier*.

Newbrook then sued Nadella—also in South Africa—seeking damages for the *Traveller*'s wrongful arrest. The South African court ordered Nadella to post a bond to cover its liability to Newbrook and to pay various costs. Nadella, citing a lack of funds, failed to post that bond, or to pay costs as ordered, and that issue apparently is still pending in South Africa. *See Nadella Corp. v. Motor Vessel 'Falcon Confidence'*, No. AC5/19, High Court of South Africa (Western Cape Division), 14 para. 43 (Apr. 28, 2021) ("April Judgment") (saved as ECF opinion attachment).[3]

### D.    The MV *Falcon Confidence*'s arrest

Continuing its effort to secure its claim against Falcon Carrier Shipping, Nadella arrested another ship, the MV *Falcon Confidence* ("*Confidence*"), in South Africa in 2019. The *Confidence* is owned by Newbrook's subsidiary Falcon Confidence Shipping

---

[2] While we need not dive deep into South African maritime law, roughly speaking, an "associated" ship is one that is owned by the same person or company who owned the "ship concerned" during the time the claim arose. Admiralty Jurisdiction Regulation Act 105 of 1983 § 7.

[3] Global Marketing asked that we supplement the record by taking judicial notice of the April 2021 order by the South African court. We grant that request.

Limited.[4]  Nadella and Falcon Confidence Shipping are now litigating in South African courts whether the *Confidence* is an associated vessel to the *Carrier*.  As Newbrook and Falcon Confidence Shipping contend that the vessels are unrelated, they have alleged that the arrest was wrongful.

### E.      The Federal Court action

That brings this journey to our shores.  Newbrook believes that Nadella is owned by Global Marketing Systems, Inc., a Maryland corporation.  Newbrook also believes Global Marketing is owned and controlled by Maryland resident Dr. Anil Sharma.[5]  So Newbrook filed an ex parte application under 28 U.S.C. § 1782 in Maryland federal district court seeking discovery for use in this ongoing saga.

Under § 1782, a party in a foreign proceeding can obtain a discovery order for materials from an American target for use in the foreign proceeding.  These applications are often decided ex parte, with the target having a chance to later challenge the discovery order.  *See, e.g.*, *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012).

---

[4] In filing this § 1782 application, Newbrook was joined by its subsidiary.  But as the reader will soon learn, the naming conventions used by Newbrook create some confusion.  And that confusion ensnares even Newbrook itself.  For example, the case's caption on Appellees' brief lists "Falcon *Confidential* Shipping Ltd.," as Newbrook's subsidiary.  But their brief's contents—and *most* of the record—refer to "Falcon *Confidence* Shipping Ltd."  We assume, for this appeal alone, that this reflects a scrivener's error and not separate entities.

[5] While Sharma was named in the application, he has never been effectively served with a subpoena and has never appeared before the district court.  So he could not be subject to discovery yet.  He is thus not a party to this appeal, and we do not address issues related to him.

Here, Newbrook's application sought information from Global Marketing and Dr. Sharma about "the circumstances surrounding Nadella's claim in the South African Action that the *Falcon Confidence* is a related ship to the *Falcon Carrier*." J.A. 12. Allegedly to support its claims of wrongful arrest—or more precisely, the claims of its subsidiary, Falcon Confidence Shipping—Newbrook requested a broad range of discovery including "documents and communications . . . sufficient to show any basis for Nadella's argument that the *Falcon Confidence* and *Falcon Carrier* are associated ships." J.A. 12. Newbrook also sought to depose Global Marketing and Dr. Sharma about topics including the "relation, affiliation, or connection" between the *Carrier* and the *Confidence*; the "ultimate beneficial ownership of Nadella" and "Sharma's relation, affiliation, or connection with Nadella"; "Nadella's intent or motive in arresting" both the *Confidence* and the *Traveller*; and information about Nadella's and Global Marketing's corporate forms. J.A. 40.

Newbrook's application was not limited to the current South Africa action involving the *Confidence*'s arrest. It also sought discovery for a contemplated action against Nadella in Nevis. But the district court rejected this action as too speculative, and Newbrook does not appeal that decision, so only the South African action is relevant here.

Based on the South Africa action, the district court granted Newbrook's ex parte discovery application in March 2020. Newbrook then tried to serve the subpoenas on Global Marketing by leaving them at Global Marketing's office with a trader—who appears to be involved in the purchase of ships or sale of scrap material. But the trader insisted that he was unauthorized to accept subpoenas. Global Marketing moved to strike service and quash the issued subpoenas on both service-of-process and substantive

7

grounds, arguing the service was improper because the subpoenas were not served on its registered agent and that the application for discovery was wrongly granted on its merits.

In November 2020, the district court denied Global Marketing's motion and ordered it to respond to the subpoena request within 30 days. Global Marketing timely appealed and persuaded the district court to stay the discovery order.

## F. Recent South African court decision

Before this Court heard oral argument, the South African court issued a new ruling in the *Confidence*-arrest litigation. There, Nadella sought to require Falcon Confidence Shipping to "make further and better discovery." April Judgment at 8 para. 24.[6] The court granted that request and directed Falcon Confidence Shipping to produce the documents that Nadella requested. *Id.* at 19 para. 57.1. The court criticized Falcon Confidence Shipping for its "abject failure . . . to produce *any* documents of real substance pertaining to the management and control of the MV *Falcon Confidence*" and entered a punitive costs order against Falcon Confidence Shipping for "obstructing the conduct of the proceedings." *Id.* at 8 para. 23, 13 para. 39.

In the same order, the court also addressed Falcon Confidence Shipping's request to compel both oral witness testimony and the production of documents in support of its argument that Nadella was a shell company that acted with unclean hands by using its

---

[6] The documents Nadella sought pertained to "(1) the incorporation and business of [Falcon Confidence Shipping] and the purchase, financing and mortgaging of the MV *Falcon Confidence*, and its management, operation and alleged control by the company and/or by Ronald and/or Nico Poons; and (2) various corporate entities or trusts . . . which [Nadella] alleges form the structure in terms of which control of the vessel ultimately vested in Nico Poons." April Judgment at 10 para. 30.

8

corporate structure to avoid paying legal costs to Newbrook. *Id.* at 14 para. 41. If Nadella acted with unclean hands, Falcon Confidence Shipping argued that Nadella could not seek relief in South African courts. But the South African court rejected Falcon Confidence Shipping's application, determining that the papers it submitted did not raise a factual dispute justifying further evidentiary factfinding. *Id.* at 15 para. 46. The court found that Falcon Confidence Shipping's discovery requests amounted to no more than a "'fishing expedition' with a view to ascertaining whether there might be a possible defense available to them,'" which could not justify the discovery it sought. *Id.* at 17 para. 51. Finally, while not reaching a firm decision on the issue, the court expressed doubt that an unclean-hands defense was viable under the circumstances given recent amendments to the South African Constitution. *Id.* at 16–17 para. 50.

## II.    Discussion

The district court's § 1782 order is a final order, so we have jurisdiction under 28 U.S.C. § 1291. *See In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014) ("Because the § 1782 order is a sufficiently final order, we have subject matter jurisdiction to hear an immediate appeal from a district court's order granting discovery under that statute."). And that final order encompasses the Global Marketing's challenge to the service of process. *See id. at* 343. We review the § 1782 order for abuse of discretion. *In re Letter of Request from Amtsgericht Ingolstadt, Fed. Republic of Germany*, 82 F.3d 590, 592 (4th Cir. 1996). And we review de novo the district court's denial of the motion to quash for insufficient service of process. *Colleton Prep. Academy, Inc. v. Hoover Univ., Inc.*, 616 F.3d 413, 421 n.9 (4th Cir. 2010).

9

## A.   28 U.S.C § 1782

Section 1782 represents nearly 150 years of efforts by Congress to encourage collaboration with foreign tribunals.  *See* Act of March 3, 1873, ch. 245, 17 Stat. 581.  The modern § 1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

The statute identifies four mandatory conditions that must be satisfied before an application can be granted:  (1) The application must be made to the "district court for the district in which the person resides or is found";  (2) the application must come from "an interested person" or a foreign tribunal; (3) the application must seek evidence, including "testimony" or "a document"; and (4) the evidence sought by the application must be "for use in a proceeding in a foreign or international tribunal."  § 1782(a); *see Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004).

We agree with the district court that the first three requirements are met here:  The application was made to the proper court, was made "by an interested person,"[7] and seeks

---

[7] An "interested person" includes legal persons, such as business associations like Falcon Confidence Shipping and Newbrook.  *See Intel*, 542 U.S. at 257.  Falcon Confidence Shipping is a party to the proceeding in South Africa and qualifies as an interested party. (That is true so long as our assumption on appeal that references to Falcon *Confidential* Shipping are scrivener's errors.)  It is less clear whether Newbrook—the parent company for Falcon Confidence Shipping—is an interested party to that action.  But (Continued)

testimonial and documentary evidence. *See In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007).

But the last condition—that the evidence sought must be "for use" in a foreign proceeding—is not fully satisfied. The statute refers to each piece of relevant evidence in the singular, stating that a district court may order a person to give "his testimony or statement or to produce *a* document or *other thing* for use in a [foreign] proceeding," § 1782(a), so the applicant must show that each thing (or at least each category of things) sought is "for use" in the foreign proceeding. Merely showing that some evidence sought within the application as a whole has some "use" is not sufficient. That does not mean that each thing or category of things sought must be essential for victory in the foreign proceeding. *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). But the court must find that there is a reasonable possibility that the evidence sought "will be employed with some advantage or serve some use in the proceeding." *Id*.

Two foreign proceedings were identified by Newbrook: the ongoing South African action related to the *Confidence*'s arrest and a proposed action in Nevis. The district court found that the South African action qualified but rejected the Nevis action as too speculative to be a "proceeding," a decision Newbrook does not challenge. But the Nevis action, Newbrook admitted, was the basis for seeking some of the evidence. And the district court seemed to agree that some evidence sought was for use in Nevis. Yet even after finding the Nevis action did not qualify as a proceeding because it was too speculative,

---

given the application is supported by one interested person, we need not decide whether Newbrook has a legitimate "interest" under § 1782 on appeal.

the district court granted the entire § 1782 application, without restricting the evidence sought to what would be "for use" in the South Africa action.

Newbrook suggests that the district court implicitly limited the discovery application to items that would be for use in South Africa. We do not read the district court's order as imposing such a limitation, given that it stated that it was denying Global Marketing's motion to quash and generally ordered Global Marketing to respond. Nor should it fall to Global Marketing to guess at which documents Newbrook wants for which actions; if the district court narrowed the subpoena's scope, it should say so clearly so that Global Marketing knows which documents it must produce and what, if any, deposition questions it must be prepared to answer.

There may well be some overlap between the two actions but satisfying the for-use condition required specifying the evidence sought for the South African action (the only qualifying foreign action). Merely including one permissible category cannot bless a list of other, impermissibly sought evidence. This record's complexity counsels us to vacate and remand this issue to the district court, to determine which evidence, if any, is really "for use" in the South African action. This is particularly appropriate after the recent South African court decision clarified the scope of the South African proceedings and required Falcon Confidence Shipping to comply with existing discovery requests in that jurisdiction, which may well bear on the "for use" requirement (and also perhaps the discretionary *Intel* factors discussed below).

If the district court determines on remand that certain evidence is "for use" in the South Africa action, that would not end the inquiry. For even where these four statutory

12

conditions are satisfied, the district court retains discretion in granting or denying these orders. *Intel*, 542 U.S. at 247 ("[Section] 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance."); *see also* § 1782 (stating that a "district court . . . *may* order" the discovery (emphasis added)). The Supreme Court has explained that in exercising its discretion, the court should conduct an equity-like balancing test, paying particular attention to the four factors identified in *Intel*: (1) the involvement of "the person from whom discovery is sought" in the foreign proceeding, (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, court or agency to U.S. federal-court judicial assistance," (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome" in which case it "may be rejected or trimmed." *Intel*, 542 U.S. at 264–65. Like the threshold requirements, these four discretionary factors should be applied to each thing sought by the application. The ultimate balance remains well within the district court's broad discretion and addresses common discovery concerns. *Cf. Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (discussing when a Rule 45 subpoena subjects a non-party to undue burden). So we leave this consideration to the district court on remand.

13

In remanding, we leave in the district court's capable hands what evidence satisfies the for-use condition and how the discretionary *Intel* factors should be applied to any evidence that does.[8]

## B. Adequacy of Service of Subpoenas

Section 1782 orders are generally governed by the Federal Rules of Civil Procedure. § 1782 ("To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."); *see Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 343 (8th Cir. 2012). Though the district judge can prescribe different rules, the court here agreed that the discovery sought "shall be governed by the Federal Rules of Civil Procedure." J.A. 67; *see* 28 U.S.C. §1782 (noting that the district court "may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing").

The district court's order authorized Newbrook "to use and serve a subpoena on the Discovery Targets" to compel discovery. J.A. 67. Federal Rule of Civil Procedure 45 governs a subpoena's service, and "requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). But for a corporation or other artificial entity, the entity is not a "person" on whom service can be directly made. *See* 9 James Wm. Moore et al., *Moore's*

---

[8] We also note that the order to comply could be read to suggest that Sharma must individually comply with the discovery required from him. But before the court may order discovery from Sharma, he must be served.

14

*Federal Practice - Civil* § 45.21 (2021). A plaintiff cannot hand a document directly to an abstraction, so that abstraction must be served through an agent. *See Daimler AG v. Bauman*, 571 U.S. 117, 135 n. 13 (2014) ("A corporation is a distinct legal entity that can act only through its agents.") (quoting 1 William Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 30, at 30 (Supp. 2012–2013)).

But the question remains to which agent the subpoena must be "delivered," and how. Fortunately, the Federal Rules give us some guidance by showing how to serve corporations generally. Rule 4(h)(1) identifies two ways a domestic corporation may be served with a summons and complaint:

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Rule 4(e)(1) permits an individual to be served in a manner permitted by "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Maryland Rule 2-124(d) first provides for service upon a corporation "by serving its resident agent, president, secretary, or treasurer." But "if a good faith attempt to serve the resident agent, president, secretary, or treasurer has failed, service may be made by serving the manager, any director, vice president, assistant secretary, assistant treasurer, or other person expressly or impliedly authorized to receive service of process." Maryland Rule 2-124(d).

15

The second service method for a corporation also expressly permits "delivering" the complaint to certain officers or agents: "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). So to satisfy Rule 45's mandate of "delivering a copy to the named person" when the "person" is a corporation, there must be delivery to an appropriate agent, as identified by Rule 4(h).

Some courts have ventured beyond that required by the Rules to permit service by any means that provides actual notice. Doing so, they have reasoned, conserves resources that would be wasted if compliance with the Rules was required. *Stiles v. Walmart, Inc.*, No. 1:20-mc-002, 2020 WL 1976426, at *4 (S.D. Ohio Apr. 24, 2020); *see Greenway Enterprises, Inc. v. CSI Eng'g, P.C.,* No. AW-07-2762, 2008 WL 11509733, at *1 (D. Md. May 23, 2008). And we do not doubt that broader means of service would save resources— though perhaps imposing other costs. But regardless of its wisdom, Rule 45 requires that the subpoena be served by "delivering a copy to the named person." Actual notice with no delivery to the named person fails to satisfy the Rule's demands.[9]

---

[9] While we hold that there must be delivery, we need not decide here "how" that delivery must occur. The predominant view appears to be that the delivery must be directly delivered by a process server personally (often referred to as "personal service"). *See* Charles A. Wright & Arthur A. Miller, 9A *Federal Practice and Procedure* § 2454 (3d ed. 2021). But at least one Circuit Court has suggested that delivery under Rule 45 may be accomplished through certified mail by the United States Postal Service. *See Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012) (finding certified mail satisfies Rule 45's delivery requirement because the postal agent qualifies as "the person at least 18 years of age" such that the postal proof-of-delivery record shows a "delivery"); *see also Hall v. Sullivan*, 229 F.R.D. 501, 503–06 (D. Md. 2005). Certified mail was not used here so we need not delve into whether delivery methods such as certified mail to a corporate agent would suffice.

The district court did not address whether an appropriate agent—as identified in Maryland Rule 2-124(d) or Federal Rule 4(h)(2)—was served in this case. This inquiry depends on applying agency law to the circumstances of service here. And we leave that in the district court's capable hands.

\*         \*         \*

Section 1782 applications give litigants access to federal courts to obtain discovery for use in international litigation. But that access is not unlimited. Among other threshold requirements, the requested discovery must be for use in a reasonably contemplated, non-speculative proceeding. Because the district court held that the speculative proceeding in Nevis did not provide a basis for § 1782 discovery, the court erred by granting the full application. So we must remand for further proceedings. We also remand for the district court to consider Global Marketing's argument that it was not properly served under the Federal Rules. So the saga does not end here, and the litigants must set out for the district court once more.

VACATED AND REMANDED